COMMONWEALTH vs. GENE L. PERRY.

Suffolk.   December 8, 1981. — March 25, 1982.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Arson. Homicide. Evidence,* Hospital record, Relevancy and materiali-
ty, Photograph, Expert opinion. *Practice, Criminal,* Instructions to
jury, Capital case.

At a murder trial, the judge acted within his discretion in excluding por-
tions of the victim's hospital record. [641-644]
At a trial of indictments for murder and for maliciously burning a dwell-
ing house, the judge acted within his discretion in admitting a photo-
graph of the room in which the victim had died in the fire, and a slide
of the victim's body, where both exhibits were relevant to the Com-
monwealth's theory that the victim was consumed in an intense, delib-
erately set fire, and that she did not fall asleep while smoking in bed.
[644]
At a trial of indictments for murder and for maliciously burning a dwell-
ing house, the judge did not err in allowing a firefighter called by the
Commonwealth to testify as an expert with respect to the cause of the
fire in which the victim had died. [644-645]
Evidence at a murder trial bearing on the defendant's capacity to pre-
meditate his acts was sufficient to warrant submission of the case to the
jury on the charge of murder in the first degree. [645-646]
At a trial of an indictment for murder in the first degree, the judge's in-
structions to the jury with respect to deliberate premeditation, when
considered in the context of the entire charge pursuant to G. L. c. 278,
§ 33E, presented no substantial likelihood that a miscarriage of justice
occurred. [646-648]
At the trial of an indictment for murder in the first degree, the judge erred
in instructing the jury, with respect to the issue of extreme atrocity and
cruelty, that "whether [the defendant] was drunk does not matter,"
and this court accordingly ordered entry of a verdict of guilty of mur-
der in the second degree and imposition of sentence thereon. [648-649]

INDICTMENTS found and returned in the Superior Court
Department on January 23, 1980.
The cases were tried before *Brogna, J.*

*David C. Casey* for the defendant.

*Michael J. Traft*, Assistant District Attorney (*Paul J. Mc-Callum*, Legal Assistant to the District Attorney, with him) for the Commonwealth.

ABRAMS, J.   Donna Walker Perry died as a result of a fire set in the bedroom of her apartment.   A grand jury indicted her husband, Gene L. Perry, for murder and arson.   After trial by jury, Perry was convicted of murder in the first degree for the death of his wife, as well as for arson.[1]   Perry appeals to this court.   He argues errors concerning (1) the exclusion of hospital records; (2) the admission of a slide and a photograph; (3) the admission of expert testimony; (4) the denial of his request for a required finding of not guilty; and (5) the judge's instructions to the jury.   We agree with the defendant that the judge's instructions contained an error which requires us to order that the conviction of murder in the first degree be reduced to murder in the second degree.

We summarize the basic facts.[2]   On the evening of November 27, 1978, Donna Walker Perry (victim), the defendant's wife, died in a fire in the bedroom of her apartment at 64 Hemenway Street, Roxbury.   On the day of the fire, the defendant told his wife that he would kill her "before the day is over."   In the early evening Perry was observed entering the apartment building, and sounds of an argument could be heard coming from the victim's apartment. Fifteen to thirty minutes later the defendant was seen leaving the building.   Shortly thereafter, a fire was discovered in the victim's bedroom.

The fire had two points of origin.   One point of origin was approximately two feet to the left of the victim, and the second point of origin was approximately six feet to the right

---

[1] The defendant was sentenced to a term of life imprisonment for the conviction of murder in the first degree.   The judge imposed a term of not less than ten years nor more than twenty years on the conviction of arson, this sentence to be served concurrently with the sentence for murder in the first degree.

[2] Additional evidence will be set forth in our review of the errors alleged.

of the victim. There were no electrical outlets, appliances, or heating equipment at either point of origin.

While firefighters were attempting to extinguish the fire, the defendant tried to force his way into the building, past a policeman. At the time, the victim's body had not yet been found. The defendant told the policeman: "My wife is up there, dead." The police took the defendant into protective custody after he again tried to gain entrance to the building. During this period the defendant kept saying, "You can't do this to me. My wife is up there, dead."

1. *Hospital records.*[3] At trial, the defendant's theory was that the fire started because the victim fell asleep in bed while smoking and drinking.[4] The defendant read portions of the victim's hospital record to the jury.[5] The judge excluded other portions of the victim's hospital record. The defendant argues that the excluded portions contained "information . . . germane to the patient's treatment or medical history," *Bouchie* v. *Murray*, 376 Mass. 524, 531 (1978), and should have been admitted under G. L. c. 233, § 79. While we agree with the defendant that the information was competent evidence under § 79, we believe that most of the entries were properly excluded.

The entries offered by the defendant concerned the victim's suicidal thoughts and the fact that in the hospital she had been found in bed, drowsy, with a cigarette. Any hospital staff member would rely on these entries in treating the patient, even though the matters did not directly relate to the exact illness for which the patient entered the hospi-

---

[3] At trial, the relevant portion of the victim's hospital record commenced with an entry dated January 30, 1977. Only portions of the record were offered at trial. In our discussion we refer by date only to those portions which are in issue.

[4] It was stipulated that the victim was an alcoholic.

[5] The hospital record, which the defendant read to the jury, was as follows: "Mood: Angry depressed." "Patient claimed she felt sad enough to wish she was dead. Not actively suicidal." "I'm too sick to be home and I'm so sleepy." "Patient found asleep in bed with lit cigarette smoldering in sheets. No burn found." "All cigarettes have been removed from room. No problem. Patient realizes how dangerous it is."

tal. If the subject matter of an entry falls within those areas which, under hospital practices, are regarded as relevant to diagnosis or treatment, it is within the statute. See, e.g., *Bouchie* v. *Murray, supra* at 530-531 (husband "very unhappy . . . before accident" admissible as assisting in diagnosis and treatment); *Commonwealth* v. *Rembiszewski*, 363 Mass. 311, 317 (1973) (diagnosis by hospital's admitting secretary that defendant had been "[b]eaten up"); P.J. Liacos, Massachusetts Evidence 333-334 (5th ed. 1981); McCormick, Evidence 731 (2d ed. 1972).

Because the hospital records, standing alone, were competent as proof of the medical facts recited therein, the defendant argues that it was error to exclude them. We do not agree. Prior to trial the defendant moved to exclude a January 10, 1978, hospital record of the victim which contained notations that the defendant had poured cooking oil over the victim and threatened to set her on fire. The record also stated that the defendant had "tried to strangle [her]" and had "beat [her] up." The judge allowed the motion to exclude this portion of the hospital record. The basis for the judge's ruling is not clear on the record.[6] Apparently, the judge determined that the record's impact would be more prejudicial than probative.

Having successfully excluded the January 10, 1978, hospital record, the defendant offered a portion of the hospital record dated January 29, 1978. The judge excluded that portion, apparently on the basis that the record contained references to the earlier portion of the January record, which Perry had successfully moved to exclude. The judge, in his discretion, could require the entire relevant portion of the record to be placed in evidence, or none of it. In essence, the defendant tried to place the Commonwealth in a "heads I win, tails you lose" situation by requesting the judge to admit those portions of a hospital record which were helpful to

---

[6] The defendant's motion stated as its reason the remoteness of the record. However, the defendant offered more remote records which were admitted in evidence.

the defendant and to exclude those portions which were harmful. "A trial judge has ample authority to protect himself and the Commonwealth from such manipulative behavior." *Commonwealth* v. *Connor*, 381 Mass. 500, 506 n.6 (1980).

The judge also excluded a record dated February 28, 1977, to March 7, 1977.[7] The basis for his ruling is also unclear on the record. Even assuming that the exclusion of this portion of the record was error, the defendant was able to present to the jury other portions of the hospital record concerning the victim's suicidal thoughts and the fact that she had been found asleep while smoking. (See note 5, *supra*).[8]

On appeal, the defendant argues that the excluded entries concerning suicidal thoughts were also relevant and would have made his theory more persuasive. The short answer is that many of the entries concerning suicide were admitted.[9] Moreover, the defendant did not argue a suicide theory to the jury.[10]

---

[7] The entries which the defendant claims should have been admitted are as follows: "possible . . . suicidal tendencies"; "I'm depressed"; "chronic alcoholic . . . [suffering a] borderline personality disorder with a long psychiatric history"; "heavy smoker"; "[patient] found to be smoking in bed. She was quite drowsy and was in lying position while smoking the cigarette."

[8] These records were of the same time period. The admitted records were dated February 22, 1977, and August 19, 1978.

[9] One entry in a record dated January 29, 1978, referred to the victim's attempted suicide ten years earlier. The judge correctly excluded this entry due to its remoteness. *Commonwealth* v. *D'Agostino*, 344 Mass. 276, cert. denied, 371 U.S. 852 (1962). P.J. Liacos, Massachusetts Evidence 410 (5th ed. 1981). Proposed Mass. R. Evid. 403 (1980).

[10] The defendant does not claim that he was denied the opportunity to present his theory to the jury. He merely claims that the jurors would have placed more credence in his defense had the entire hospital record been admitted. Further, he claims the entire hospital record might have raised a reasonable doubt in view of the circumstantial case against him. We do not agree. The Commonwealth's expert opinion, as well as the place and condition of the victim's body, were all inconsistent with the defendant's theory that the victim died as a result of falling asleep while smoking in bed. The victim's body was found on the floor of the bed-

Thus, the only excluded portion of concern is an entry concerning the victim's smoking in bed. Since the defendant brought this fact to the jury's attention, the excluded entry would not have had sufficient additional impact to change the result of the case. See *Commonwealth* v. *Copeland*, 375 Mass. 438, 442-443 (1978). In these circumstances, the members of the jury would not have been more likely to give credence to the defendant's theory if they had had before them this one additional entry as to the victim's smoking in bed.

2. *Admission of photograph.* The defendant claims that the judge erred in admitting a photograph of the room where the fire occurred, and a slide of the victim's body. The defendant claims that the pictures were inflammatory and had no probative value. There is no merit to this claim. Both the photograph and the slide were relevant to the Commonwealth's theory that the victim was consumed in an intense, deliberately set fire, and that she did not fall asleep while smoking in bed.[11] Whether a photograph possesses evidential value on a material matter is within the discretion of the trial judge. *Commonwealth* v. *Bastarache*, 382 Mass. 86, 106 (1980). *Commonwealth* v. *Stewart*, 375 Mass. 380, 385 (1978). See P.J. Liacos, Massachusetts Evidence 395-397 (5th ed. 1981).

3. *Admissibility of expert testimony.* The defendant claims that the judge erred in admitting expert testimony on the cause of the fire because the witness "lacked sufficient skill, knowledge and experience in the investigation of arson

---

room. It was severely burned and charred. However, "[t]he back of the body was not burned. It . . . didn't show any charring, nor did it show even first-degree burns." The condition of the body indicated that it was on the floor when the fire started, not in bed. The medical examiner opined that the victim died as a result of a "charred body," not smoke inhalation, and that only a flash fire with intense heat could cause such a result. The arson expert stated that a mattress fire usually smolders for at least one hour before igniting. Finally, the existence of two points of origin suggests that the fire was set.

[11] Although the judge admitted the photographs in evidence, he did not permit them to go with the jury during their deliberations.

to testify as an expert witness regarding the cause of the fire." *Commonwealth* v. *Rhoades*, 379 Mass. 810, 817 (1980). We do not agree.

The judge qualified as an expert a witness who had been a Boston firefighter for fourteen years, and had worked on 2,500 building fires. At the time of trial, he had been a member of the arson squad for two and one-half years. As a member of the arson squad, the witness had investigated approximately 400 fires, and in at least 300 of them he was able to determine whether or not the fire had been set. The witness had attended courses on arson investigation at Northeastern University, Bunker Hill Community College, and an eighty-hour course conducted at the Massachusetts State Police Academy, sponsored by the Massachusetts Committee on Criminal Justice. He also attended a Plymouth County arson seminar. The witness had qualified as an expert, and had testified as to the cause of fires at least twenty-five times, in various courts. There was no error in the judge's ruling. "[T]he qualification of a witness to offer an expert opinion on a given question is for determination by the trial judge as a preliminary issue of fact." *Commonwealth* v. *Seit*, 373 Mass. 83, 92 (1977). See P.J. Liacos, Massachusetts Evidence 113 (5th ed. 1981).

4. *Required finding of not guilty.* At the close of the Commonwealth's case, the defendant moved for a required finding of not guilty. "In reviewing the denial of a motion for directed verdict, we consider only the evidence introduced up to the time the Commonwealth rested its case." *Commonwealth* v. *Rhoades*, 379 Mass. 810, 815 (1980), quoting *Commonwealth* v. *Borans*, 379 Mass. 117, 134 (1979). "We must determine whether the Commonwealth's evidence, 'considered in its light most favorable to the Commonwealth, was sufficient to permit the jury to infer the existence of the essential elements of the crime charged,' . . . and 'to bring minds of ordinary intelligence and sagacity to the persuasion of . . . [guilt] beyond a reasonable doubt.' . . . Finally, such evidence must exist in regard to each ele-

ment of the crime with which the defendant was charged." *Commonwealth* v. *Rhoades*, 379 Mass. at 815.

The defendant contends that there was insufficient evidence to permit submission of the case to the jury on the charge of murder in the first degree. The defendant claims that the Commonwealth's evidence "demonstrated at best" that the "defendant was very drunk and therefore could not have deliberated over his act" nor "could he . . . have intended to kill his wife in a manner that could be characterized as extremely atrocious or cruel." There is no merit to this contention. The defendant concedes that the evidence, considered without regard to the defendant's drunkenness, was sufficient to support a conviction of murder in the first degree. "Directing a verdict in these circumstances would constitute an unwarranted invasion of the province of the jury. See G. L. c. 265, § 1 (the jury determine the degree of murder)." *Commonwealth* v. *Gould*, 380 Mass. 672, 679 (1980).[12]

5. *Jury instructions.* The judge submitted the case to the jury on murder in the first degree on two grounds: deliberately premeditated malice aforethought, and extreme atrocity or cruelty.

a. *Deliberate premeditation.* The defendant argues that the judge erred in illustrating or elucidating the meaning of several passages of his charge, referring only to evidence which tended to support the Commonwealth's case and failing to make corresponding or balancing references to the defendant's evidence. The defendant argues, as did the defendant in *Commonwealth* v. *Therrien*, 371 Mass. 203, 206 (1976), that "the charge focused unduly on the prosecution's theory and might thus have led the jury to believe that the judge was himself convinced of the defendant's guilt."

---

[12] The defendant argues that if the judge erred in his determination that the expert witness was qualified to give an opinion as to whether the fire was incendiary in nature then "there would be insufficient evidence to permit submission of the case to the jury on the charge of arson." Since we have concluded that the judge did not err in his determination that the witness would qualify as an expert, there was ample evidence for the jury to consider the charge of arson.

The defendant did not object to the judge's charge on this ground. "Although the absence of any objection is relevant, *Commonwealth* v. *Fluker*, 377 Mass. 123, 131 (1979), we are obliged to review the instructions pursuant to § 33E to determine whether there is a ' "substantial likelihood that a miscarriage of justice had occurred . . . ." ' " *Commonwealth* v. *Tavares, ante* 140, 148 (1982), quoting *Commonwealth* v. *Garcia*, 379 Mass. 422, 439 (1980).

The defendant claims that the judge's charge, with its emphasis on the Commonwealth's evidence, stated a one-sided view of the case and gave the jurors a distorted picture of what was at issue. In making his argument, he selects those portions of the instructions which support his claim. However, "[e]rror in a charge is determined by reading the charge as a whole, and not by scrutinizing bits and pieces removed from their context." *Commonwealth* v. *Cundriff*, 382 Mass. 137, 153 (1980).

The judge referred to the Commonwealth's burden of proof in a criminal case several times throughout his charge. The judge forcefully and continuously stressed that the Commonwealth had the burden of proving each and every element of its case beyond a reasonable doubt, and that the defendant did not have any burden of proof nor did he have to convince the jury that he did not commit the crimes.

Further, in the present case, the judge clearly instructed the jury that any examples of evidence he might give them were only made to facilitate their understanding of the law, and that they should not pay any more attention to it, or give it any greater credibility simply because he happened to mention it. See *Commonwealth* v. *Therrien*, 371 Mass. 203, 207 (1976).[13] Considering the charge in its entirety,

---

[13] For example, the judge stated: "[I]f, in the course of the charge, I happen to refer to any of the evidence or the testimony, I want you clearly to understand that, first, if your memory of the evidence is different from the way I remember it, it is your memory that is to guide you, not mine.

"And, secondly, if I refer to any of the evidence, I will do so by way of example only, in order to make the law a little easier for you to understand and apply. I, in no way, intend to infer that you are to pay any

and in relation to the whole record, it did not "stress or argue a particular side on an issue to the jury," *Commonwealth* v. *Harris*, 376 Mass. 201, 208 (1978), nor was there "such preponderance of attention to the prosecution's case as might mislead the jury to the defendant's prejudice," *Commonwealth* v. *Therrien, supra* at 206-207.

b. *Extreme atrocity or cruelty.* There was evidence that the defendant was extremely intoxicated on November 27, 1978. Therefore, the defendant requested an instruction consistent with *Commonwealth* v. *Gould*, 380 Mass. 672, 685 (1980). The judge declined to give such an instruction. Instead he told the jurors that "if you find the murder to be of extreme atrocity and cruelty because of the effect upon the body of the victim, then, whether [the defendant] was drunk or not does not matter."

On appeal, the defendant argues that this instruction is erroneous and that we should order a new trial or reduce his conviction to murder in the second degree. We agree with the defendant that there is error in this instruction but that error does not require us to order a new trial. Since the defendant seasonably objected to the judge's instructions on extreme atrocity and cruelty, this error requires us to order that the verdict of murder in the first degree be reduced to murder in the second degree.

In *Commonwealth* v. *Gould, supra,* we stressed that since the jurors have to determine whether the defendant's acts are "so shocking as to amount to extreme atrocity or cruelty," they cannot carry out their responsibility unless

---

more attention, place any more credibility, put any more importance on a particular piece of evidence that I happen to mention than on all the other evidence in the case. . . . [N]obody can ever overturn you. You are the sole judges of the facts. You, and you alone, are the ones who say from the evidence what really happened.

"As was pointed out, it is your function and yours alone to determine whether you're going to believe all, part or none of the testimony of any witness who appeared before you. It is your function alone as to whether or not you are going to follow or to buy the opinion of the witnesses who appeared before you and whom, for want of a better word, we call experts."

they are permitted to consider the defendant's peculiar mental state as a factor in determining whether the murder was committed with extreme atrocity or cruelty. "Impairment of a defendant's ability to make a decision in a normal manner may have a direct bearing on the degree of murder, and consequently, on the issue of extreme atrocity or cruelty." *Id.* at 686. Thus, the defendant was entitled to have the jurors determine as one of the circumstances or facts in the case whether the defendant was so intoxicated at the time the murder was committed that his criminal culpability should be reduced.[14] "[J]ury consideration of the entire circumstances of the crime, including a defendant's mental impairment" is needed if the criminal law is to "'accurately express community condemnation' . . . . Consideration of the defendant's impaired capacity as well as the character of his acts is essential if the jury [is] to serve fully and fairly as the community's conscience in separating extreme atrocity or cruelty from that atrocity or cruelty inevitably included in the destruction of any human life." *Id.*

Since we have concluded that the judge erred in declining to permit the jurors to consider the defendant's intoxication in determining the degree of his criminal culpability, we must decide whether to order a new trial or order entry of a verdict of guilty of murder in the second degree. The jury's verdict established that the defendant was guilty of murder. There was ample evidence to support the verdict. There is no error which requires reversal of that verdict. Thus, "[i]f we were to award a new trial it would be to decide only whether the [defendant is] guilty of first degree murder or second degree murder, since the [verdict] established that

---

[14] The defendant does not ask us to consider the question whether the common meaning of "cruel" and "atrocious" requires mental intent, in addition to malice aforethought, for conviction of murder in the first degree based on extreme atrocity and cruelty. Webster's Second New Int'l Dictionary at 635 (1959) defines "cruel" as "disposed to give pain to others; willing or pleased to hurt or afflict." "Atrocious" is defined as "savagely brutal; outrageously cruel or wicked." *Id.* at 176. We, therefore, do not reach that issue. See *Commonwealth* v. *Gould, supra* at 683 n.14.

the [defendant is] guilty of murder. We conclude that justice will be best served if [a guilty verdict] of second degree murder [is] now entered." *Commonwealth* v. *Rego,* 360 Mass. 385, 396-397 (1971).

We remand this case to the Superior Court where the verdict of guilty of murder in the first degree, and the sentence imposed thereon are to be vacated. A verdict of guilty of murder in the second degree is to be entered and a sentence of "imprisonment in the state prison for life" is to be imposed thereon. G. L. c. 265, § 2.[15] The judgment on the indictment for arson is affirmed.

*So ordered.*

---

[15] We have reviewed the record and conclude that we should not exercise our power under G. L. c. 278, § 33E, to grant the defendant further relief.