COMMONWEALTH vs. WILLIAM F. McDERMOTT.

Norfolk.   September 11, 1984. — December 11, 1984.

Present: HENNESSEY, C.J., LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Homicide. Self-Defense. Evidence,* Cumulative, Cross-examination.
*Practice, Criminal,* Instructions to jury, Capital case.

At the trial of a murder case, exclusion of testimony by the defendant's
mother expressing an opinion as to the defendant's emotional maturity
was not error and, in any event, did not prejudice the defendant since
there was other evidence from which the jury could evaluate the emotional
maturity of the defendant. [453-454]
The judge at the trial of a murder case did not abuse his discretion in limiting
the defendant's cross-examination of a witness for the prosecution where
the witness's answer to an earlier question had already given the jury
the substance of the information sought to be elicited. [455-456]
At the trial of a murder case, the judge's refusal to instruct the jury that the
defendant's intoxicated state could be considered in determining whether
the killing was committed with extreme atrocity or cruelty was reversible
error, especially since it appeared that the jury had convicted the defend-
ant of first degree murder based on extreme atrocity or cruelty. [456-457]
Having found prejudicial error at the trial of a first degree murder case in the
judge's refusal to give certain instructions on murder with extreme atroc-
ity or cruelty requested by the defendant, this court exercised its power
under G. L. c. 278, § 33E, to reduce the verdict to murder in the second
degree, rather than ordering a new trial. [457-459]
At the trial of a murder case in which the defendant testified that the killing
had occurred in self-defense against a homosexual rape, no substantial
risk of a miscarriage of justice resulted from the judge's failure to refer
to rape specifically in instructing the jury on self-defense. [459-460]
On review of a first degree murder conviction pursuant to G. L. c. 278,
§ 33E, this court concluded that the defendant's youth and background,
in combination with the other evidence in the case, warranted a reduction
of the verdict to murder in the second degree. [460-461]

INDICTMENT found and returned in the Superior Court De-
partment on November 30, 1981.

The case was tried before *John J. Irwin, J.*

*Richard Zorza* for the defendant.

*Peter W. Agnes, Jr.,* Assistant District Attorney, for the Commonwealth.

LIACOS, J. On November 30, 1981, William F. McDermott was indicted for the armed robbery and murder of Robert Kemp. A jury found the defendant not guilty of armed robbery and guilty of murder in the first degree. He was sentenced to the statutory term of life imprisonment. Following discharge of the jury, the defendant renewed a motion for a required finding of not guilty under Mass. R. Crim. P. 25 (b) (2), 378 Mass. 896 (1979), and moved that the court revise or revoke the sentence. The trial judge denied the motions, and the defendant filed an appeal with this court.

We summarize the basic facts.[1] The body of Robert Kemp, the manager of the Cohasset Golf Club, was found on November 21, 1981, near the eighteenth hole. The defendant, a seventeen year old, had worked for Kemp at the golf club. The defendant had shot Kemp at the club the day before with Kemp's own gun. The defendant testified that the shooting had occurred in self-defense against an anal homosexual rape. The Commonwealth argued that the defendant was guilty of murder in the first degree on three theories: felony-murder, deliberate premeditation, and extreme atrocity or cruelty. G. L. c. 265, § 1. In support of these theories, the Commonwealth presented evidence concerning Kemp's petty cash box and the disappearance of certain personal effects; evidence concerning the number and location of bullet wounds, projectiles, fragments, and bullet casings; testimony of those who saw Kemp near the time of the killing; and rebuttal testimony as to Kemp's sexual preference.

The defendant contends that the trial judge committed reversible error˙ by (1) refusing to allow the defendant's mother to testify regarding his emotional maturity, (2) refusing to permit the defendant to bring out on cross-examination of a key rebuttal witness the political prominence of the witness's mother, and

---

[1] We will examine other evidence in the context of the defendant's specific contentions.

(3) refusing to instruct the jury that the defendant's intoxicated state could be considered in determining whether the killing was committed with extreme atrocity or cruelty. In addition, the defendant urges this court to exercise its power under G. L. c. 278, § 33E, to grant a new trial because (1) the trial judge failed to instruct the jury regarding the defendant's right to use force to resist rape, and (2) the defendant's youth, lack of propensity to violence, relationship to Kemp, and various other factors call for relief under G. L. c. 278, § 33E. We examine each of the defendant's contentions and conclude that justice requires the reduction of the verdict to that of murder in the second degree.[2]

1. *Exclusion of the testimony of defendant's mother.* There was testimony from Carolyn McDermott, the defendant's mother, and the defendant that the defendant had been an average student until the eighth grade, that he had completed that grade and had failed the ninth grade. She testified that her son related well to most other children, but that his friends were generally younger than he. She also testified that the defendant was "very kind and considerate" and "probably the most caring and loving" of her six children. She said that there was conflict and lack of communication between the defendant and his father, and that the defendant had a close relationship with his older brother who was a sergeant in the Air Force.

She also was asked the following question: "Now, having in mind that you are [the defendant's] mother, can you give me an evaluation of his emotional maturity?" On objection, the answer was excluded. The defendant's counsel represented to the court that he expected the defendant's mother to testify that the defendant had the emotional maturity of a twelve-to-fourteen-year old person. The defendant argues that the exclusion of this evidence is reversible error because it deprived him of an opportunity to present his theory of the encounter,

---

[2] Under G. L. c. 278, § 33E, we may order a new trial, or direct the entry of a verdict of a lesser degree of guilt, if we are satisfied that the verdict was against the law or the weight of the evidence, or because of newly discovered evidence, or for any other reason that justice may require.

denied him the right to rebut the evidence of consciousness of guilt in the form of flight, and denied him an opportunity to meet the claim of extreme atrocity or cruelty.

Assuming, for purposes of argument, the relevance of this evidence, the question remains of the witness's competence to give an opinion of this sort. A lay witness is not competent to give an opinion on a person's mental condition. See *Commonwealth* v. *Connolly,* 356 Mass. 617, 625-626 (1970). Cf. *Commonwealth* v. *Schulze,* 389 Mass. 735, 738-739 (1983), and cases cited. See also P.J. Liacos, Massachusetts Evidence 117-118 (5th ed. 1981). The question called for an "evaluation," not a shorthand rendition of facts of the witness, as the defendant contends. Thus, cases such as *Commonwealth* v. *Turner,* 371 Mass. 803, 813 (1977) (person appeared to be "very nervous"), on which the defendant relies, are inapposite. The judge's ruling was not erroneous.

Further, even if we were to assume an error in the trial judge's exclusion of this testimony, the defendant was not prejudiced. The defendant argues that the jury were confused by his "inconsistent" testimony that he had voluntarily participated in repeated oral sex with Kemp in exchange for money, and had accepted his job with Kemp in return for oral sex, yet resisted forcible anal intercourse. While we have some doubt whether this testimony is necessarily inconsistent, we note the admission of the mother's other testimony from which the jury could evaluate the emotional maturity of the defendant. Cf. *Commonwealth* v. *Rubin,* 318 Mass. 587 (1945) (exclusion of testimony showing threats of violence against the defendant by the victim not prejudicial error where evidence of substantially as strong threats against the defendant was admitted through another witness); *Commonwealth* v. *Brewer,* 164 Mass. 577 (1895) (exclusion of testimony of defendant's physical state was cured by later testimony). Considering the witness's testimony in its entirety, in addition to the jury's evaluation of the defendant's demeanor, we conclude that the defendant was not prejudiced by the exclusion of the opinion testimony of the mother.

2. *Trial judge's refusal to permit certain cross-examination of rebuttal witness.* The defendant's case rested on the assertion that the defendant shot Kemp to prevent an anal rape. The defendant outlined a scenario of sexual coercion and dominance by Kemp in which sex was a condition of his employment. The defendant offered the supportive testimony of Peter Werner. Werner testified that Kemp had offered to pay for sex with him and, in return for sex, to hire him at the golf club.

In rebuttal, the Commonwealth presented the testimony of Philip McGee, a seventeen year old student whom Kemp had hired to perform part-time maintenance work at the club. McGee stated that Kemp had never made any homosexual advances toward him nor mentioned any homosexual contact to him.[3] He also stated that he had never observed Kemp engaging in any homosexual activity. On cross-examination, the defendant elicited from McGee the name of McGee's mother and the fact that she was "very prominent in Cohasset." The defendant was not permitted to question McGee as to the nature of his mother's prominence. The excluded question was designed to establish that McGee's mother was politically prominent in Cohasset, which, the defendant argues, would explain why Kemp may not have solicited McGee to engage in homosexual acts.

"[T]he scope of cross-examination, including to what extent the accuracy, veracity, and credibility of a witness may be tested, rests largely in the sound discretion of the judge, not subject to revision unless prejudice is shown to a party by reason of too narrow restriction or too great breadth of inquiry." *Commonwealth* v. *Smith,* 329 Mass. 477, 479 (1952). With this precept in mind, we conclude that there was no error in this limitation of the defendant's cross-examination. When matters sought to be elicited have been brought to the attention of the jury through other questioning or means, the right of cross-examination is not infringed. *Commonwealth* v. *Walker,* 370 Mass. 548, cert. denied, 429 U.S. 943 (1976). McGee's testi-

---

[3] There was no objection to the relevance of this testimony. See P.J. Liacos, Massachusetts Evidence 425-426 (5th ed. 1981).

mony that his mother was prominent in Cohasset was ample evidence as to her power to influence Kemp. Any further explanation would have been cumulative as to her influential position in the community. Cf. *Murphy* v. *Conway*, 360 Mass. 746, 750 n.3 (1972) (any possible error was harmless because the excluded testimony was cumulative, inasmuch as there was other testimony describing the same symptoms).

3. *Refusal to charge the jury regarding intoxication and cruel or atrocious killing.* The defendant requested a jury instruction that evidence of his alleged intoxication could be considered in mitigating to murder in the second degree their verdict of murder in the first degree under the theory of murder committed with extreme atrocity or cruelty. The trial judge failed to so charge, the defendant objected, and the judge again refused to give the instruction. The matter was brought up again as part of the defendant's motions for posttrial relief. The judge then reaffirmed his earlier decision. The defendant contends that our decisions in *Commonwealth* v. *Gould*, 380 Mass. 672 (1980), and *Commonwealth* v. *Perry*, 385 Mass. 639 (1982), require such an instruction. We agree.

In *Gould, supra,* we held that the jury should be allowed to consider the defendant's mental disease on the issue of extreme atrocity or cruelty.[4] In *Perry, supra,* we explicitly expanded the *Gould* rationale to include consideration of the defendant's intoxication.[5] These two decisions do not require

---

[4] "[T]he defendant's mental impairment is to be weighed in evaluating the . . . factors customarily associated with extreme atrocity or cruelty." *Commonwealth* v. *Gould, supra* at 686 n.16.

[5] Although we expressly applied the *Gould* holding to intoxicated defendants in *Perry*, that decision was "clearly foreshadowed" by *Gould*. *Commonwealth* v. *Breese*, 389 Mass. 540, 542 (1983). In any event, the *Perry* decision was rendered on March 25, 1982; the jury in the instant case were charged on July 1, 1982.

Since *Perry*, we have used even stronger language to convey the importance of this instruction. In *Commonwealth* v. *Breese, supra* at 541, we viewed our decision in *Perry* as holding that "the jury *must* be permitted to consider the defendant's intoxication" (emphasis added). And in *Commonwealth* v. *Doucette*, 391 Mass. 443, 455 (1984), we noted that the instruction is "required if requested."

the Commonwealth to show specific mental intent beyond malice aforethought to convict for murder in the first degree with extreme cruelty or atrocity; however, they have operated to dilute a purely objective test. *Commonwealth* v. *Cunneen,* 389 Mass. 216 (1983). Two rationales underlie the *Gould* and *Perry* decisions. First, fairness requires that if a jury consider a defendant's possible malicious mind as evidence that he acted with cruelty, then an impaired, or intoxicated, mind must also be considered. See *Gould, supra* at 684-685. Second, through consideration of a defendant's intoxicated state, a jury can best "serve fully and fairly as the community's conscience in separating extreme atrocity or cruelty from that atrocity or cruelty inevitably included in the destruction of any human life." *Gould, supra* at 686. A jury can then "accurately express community condemnation." *Id.*

The Commonwealth's reliance on *Commonwealth* v. *Coleman,* 389 Mass. 667 (1983), is misplaced. In that case, the defendant failed to request a *Perry* instruction and to object to the judge's failure to give it. Our review was limited to our power under G. L. c. 278, § 33E; particularly strong evidence was therefore required for intervention. We declined to exercise our power under § 33E, finding that evidence of the defendant's intoxication simply did not detract from the viciousness of the crime: the victim had been stabbed twenty-six times and had suffered a brutal and painful death. *Id.* at 674. We conclude that in the instant case the judge's failure to instruct the jury as requested was error.

We turn now to the question whether the error was prejudicial. By returning a verdict of not guilty of armed robbery, the jury clearly rejected the Commonwealth's felony-murder theory. For a variety of reasons, the jury could have rejected a deliberate premeditation theory of murder and could have based their verdict on extreme atrocity or cruelty, the instruction to which was erroneous.

Evidence was admitted as to the defendant's intoxication. The defendant testified that at the time of the killing he was drunk; he had consumed five drinks and had smoked "a joint or

two."[6] One prosecution witness testified, however, that the defendant appeared sober when he saw him just prior to the shooting. In any case, because the judge found sufficient intoxication to warrant an instruction with respect to deliberately premeditated murder, a similar instruction was required under the extreme atrocity or cruelty theory.[7]

The prejudicial effect of the error was not mitigated by other instructions in the charge. Even though a charge that the jury must find that the defendant acted with specific intent to murder in an extreme or atrocious manner is not required, see *Commonwealth* v. *Cunneen, supra* at 226-229, the trial judge instructed the jury that the Commonwealth had to prove "that the [d]efendant intended to perpetrate the killing in that fashion" and "that it was unusual, barbarous, and shocking." This instruction, however, does not cure the error in the charge. A jury could have found the defendant's act intentional, yet not extremely atrocious or cruel, due to the defendant's intoxication. This result is consistent with one of the rationales underlying the decisions in *Gould* and *Perry*: the jury should reflect the community's conscience in determining what constitutes an extremely cruel or atrocious killing. In that role, the jury must take

---

[6] There was evidence that the defendant was five feet two inches to five feet five inches tall and weighed about 128 to 135 pounds. Evidence was also admitted showing that the defendant had arrived at the club at about 1:30 P.M., that the killing had occurred at about 4 P.M., and that the defendant had consumed the five drinks since his arrival at the club. Other evidence showed the defendant's general substance abuse problems.

[7] In *Commonwealth* v. *Doucette, supra,* we indicated that "a defendant is entitled, upon request, to an instruction to the effect that if he were so far overcome by intoxicating substances as to be rendered incapable of deliberate premeditation or of committing murder with extreme atrocity or cruelty, the jury must return a verdict of murder in the second degree, if they are satisfied beyond a reasonable doubt that all other elements of the crime are present." This issue was treated under our duty to conduct review under G. L. c. 278, § 33E. The references to being "overcome" in the court's remarks are best understood in the context of our review under § 33E. The defendant in this case was entitled to an instruction that the jury could consider his possible intoxication in mitigating murder in the first degree committed with extreme atrocity or cruelty to murder in the second degree. The instruction need not specify that the defendant was extremely intoxicated or "overcome by intoxicating substances."

a defendant's intoxication into account when evaluating cruelty or atrocity aside from any issue of intent. "Impairment of a defendant's ability to make a decision in a normal manner may have a direct bearing on the degree of murder, and consequently, on the issue of extreme atrocity or cruelty." *Commonwealth* v. *Gould,* 380 Mass. 672, 686 (1980).

Nor can we conclude fairly that the error in the charge was corrected by the instruction that the jury could take account of "all the evidence" in determining whether the defendant had acted with extreme atrocity or cruelty. The trial judge specifically instructed the jury to consider the defendant's alleged intoxication with respect to deliberately premeditated murder. Because such an instruction was omitted from the charge pertaining to murder committed with extreme atrocity or cruelty, the jury easily could have assumed the obvious: despite language suggesting that they consider "all the evidence," they were to weigh the defendant's alleged intoxication only in connection with deliberately premeditated murder.

We conclude that the judge erred in declining to permit the jurors to consider the defendant's intoxication in determining whether the defendant had acted with extreme atrocity or cruelty. Ordinarily, we would order a new trial, but because it appears that the Commonwealth would be content with a conviction of murder in the second degree, we exercise our power under G. L. c. 278, § 33E, to reduce the verdict to murder in the second degree. As will be discussed in part 5 below, we believe that reduction of the verdict to be appropriate, in any event, given the entire posture of the case.

4. *Instruction on self-defense.* The judge told the jury that the defendant had the right to resist "the use of deadly or extreme force" if he "feared reasonably that he was about to be seriously injured or killed." The defendant argues that the judge should have instructed the jury that (1) the defendant had the right to use deadly force to resist rape, or (2) the defendant had the right to use nondeadly force to resist rape as distinct from serious injury or deadly or extreme force. No such request was made at trial, nor was there any objection to the judge's charge on self-defense. The defendant, however,

urges us to exercise our power under G. L. c. 278, § 33E, to grant a new trial.

While we leave open the question of the amount of force one properly may exercise to resist rape, we find that it is clear from the entire record that the self-defense charge, as given, could only have related to an attempted rape. Furthermore, even if we assume that the charge should have referred to rape specifically, in the absence of a request for such an instruction, there has been no substantial risk of a miscarriage of justice with respect to this issue. See *Commonwealth* v. *Genius,* 387 Mass. 695, 698 (1982); *Commonwealth* v. *Richmond,* 379 Mass. 557, 562 (1980).

We decline to exercise our power under G. L. c. 278, § 33E, to grant a new trial on this basis.

5. *Review of the record under G. L. c. 278, § 33E.* It appears that the jury's verdict of murder in the first degree rests largely on evidence that the gun was reloaded, presumably indicating either deliberate premeditation or extreme atrocity or cruelty. Evidence was also introduced from which the jury could conclude that Kemp survived an initial shooting for several minutes, only then to be shot four times in the head. While we do not decide whether such facts constitute murder committed with extreme atrocity or cruelty,[8] we find that the defendant's youth and background, in combination with the other evidence in the case, warrant a reduction of the verdict to murder in the second degree.

"[I]n deciding whether to 'shade the verdict,' we are entitled to give weight to the defendant's character." *Commonwealth* v. *Tavares,* 385 Mass. 140, 159, cert. denied, 457 U.S. 1137 (1982) (quoting *Commonwealth* v. *Seit,* 373 Mass. 83, 95 [1977]). The defendant was just seventeen years old at the time

---

[8] Cf. *Commonwealth* v. *Laliberty,* 373 Mass. 238 (1977) (eighty year old victims were stabbed and their bodies mutilated); *Commonwealth* v. *Reddick,* 372 Mass. 460 (1977) (victim stabbed eleven times; a bottle opener with a sharp fork and a serrated edge entered one eye, ran through the upper nose, and exited through the other eye); *Commonwealth* v. *Satterfield,* 362 Mass. 78, 82 (1972) (crime committed with such savagery and brutality as to constitute murder committed with extreme atrocity or cruelty).

of the incident, academically deficient, with some drug and alcohol problems. There was evidence of sexual confusion and of a poor relationship with his father. He had no criminal record. Furthermore, where no third-party witness exists to give any details of the encounter, the defendant's account, which he took the stand to defend, deserves consideration. *Commonwealth* v. *Seit, supra* at 94. The defendant gave an account of homosexual enticement and domination by Kemp, some of which was corroborated by similar testimony from another witness. While the defendant was unable to explain some of the physical evidence, he gave testimony of a killing following, and in fear of repetition of, an anal rape.

Most importantly, the error in the jury instruction discussed in part 3, *supra,* requires that we set aside the verdict as to murder in the first degree. However, the error in the judge's failure to give an appropriate charge on extreme atrocity or cruelty does not detract from the validity of the verdict that the defendant was guilty of murder. There was sufficient evidence to support that verdict. "If we were to award a new trial it would be to decide only whether the defendant[ ] [is] guilty of first degree murder or second degree murder, since the verdict[ ] established that the defendant[ ] [is] guilty of murder. We conclude that justice will be best served if [a] guilty verdict[ ] of second degree murder [is] now entered." *Commonwealth* v. *Rego,* 360 Mass. 385, 396-397 (1971).

The case is remanded to the Superior Court, where the previous verdict and sentence are to be vacated; a verdict of guilty of murder in the second degree is to be entered, and sentence imposed thereon.

*So ordered.*