## COMMONWEALTH *vs.* ROGER D. FRANCIS.

Plymouth. October 5, 2007. - November 28, 2007.

Present: MARSHALL, C.J., GREANEY, COWIN, CORDY, & BOTSFORD, JJ.

*Practice, Criminal,* Capital case, Waiver of trial by jury, Argument by prosecutor. *Evidence,* Medical record.

A criminal defendant charged with murder in the first degree failed to demonstrate that the bar to jury waiver in capital cases contained in G. L. c. 263, § 6, violated his constitutional rights to due process [134-135] or to equal protection, given the statute's rational purpose of treating defendants facing the uniquely severe penalty arising from a conviction of murder in the first degree differently from other defendants [135-136]; further, the defendant's arguments that the definition of "capital case" did not include a charge of murder in the first degree were without merit [136-137].

At a murder trial, no substantial likelihood of a miscarriage of justice arose from the judge's refusal, based on a misunderstanding of the medical records statute, G. L. c. 233, § 79, to allow the defendant to winnow the voluminous records of his psychiatric treatment and present to the jury only certain parts of the records, where the defendant could point neither to a specific item of inadmissible evidence that was given to the jury nor to an item of admissible evidence that the jury were not allowed to see; where there was ample testimony as to the defendant's psychiatric history; and where there was nothing in the records that was not cumulative of that testimonial evidence. [138-140]

At a murder trial, no substantial likelihood of a miscarriage of justice arose from the prosecutor's use of the phrase "justice delayed is justice denied" in closing argument, where the jury were obviously aware that more than thirty years had passed since the murder, and where the judge had instructed the jury that closing arguments were not evidence [140-141]; further, the prosecutor's characterization of the shooting as "execution-style" was a permissible comment on the evidence [141]; certain language in the prosecutor's closing argument did not improperly suggest that the defendant had any burden to produce certain eyewitness testimony or evidence of his mental illness [141-142]; and any error arising from the prosecutor's truncated statement of the criteria for determining criminal responsibility was cured by the judge's later extensive and accurate instruction on that issue [142-143].

INDICTMENT found and returned in the Superior Court on May 11, 1967.

Following the decision of this court, 355 Mass. 108 (1969), a motion for a new trial, see 411 Mass. 579 (1992), and the withdrawal of a plea of guilty, the case was tried before *Linda E. Giles*, J.

*Charles K. Stephenson* for the defendant.

*Gail M. McKenna*, Assistant District Attorney, for the Commonwealth.

Cowin, J. In November, 1967, the defendant was convicted of murder in the first degree for the killing of Marialice Pike in March, 1967. In 1969, we affirmed the judgment and the denial of his motion for a new trial. *Commonwealth* v. *Francis*, 355 Mass. 108 (1969). In 1989, the defendant moved again for a new trial; that motion was allowed by another judge (the original trial judge having retired).[1] The Commonwealth appealed, and in 1992, we affirmed the allowance of the motion for a new trial. *Commonwealth* v. *Francis*, 411 Mass. 579, 580 (1992). The defendant pleaded guilty to murder in the second degree in 1994, but in 2000, he successfully moved to withdraw that plea. The defendant was tried again for murder in the first degree in June, 2003. As at his first trial, his defense was lack of criminal responsibility. The defendant was once more convicted of murder in the first degree, on theories of deliberate premeditation and extreme atrocity and cruelty.

The defendant now appeals from that conviction, arguing that (1) the judge improperly denied his motion to waive a jury trial; (2) the judge erroneously required that the defendant's medical records be admitted in evidence in their entirety; and (3) the prosecutor made improper statements during closing argument. He also requests that this court grant him a new trial, or that we reduce his conviction pursuant to our authority under G. L. c. 278, § 33E. We affirm and decline to exercise our extraordinary power under § 33E.

*Facts.* The facts of this case are summarized in *Commonwealth* v. *Francis*, 355 Mass. at 109. The evidence at the second

---

[1] The motion judge ruled that, by equating the degree of certainty needed for a guilty verdict with the certainty jurors would require in making important decisions in their own lives, the trial judge had "impermissibly detracted from the seriousness of the issues facing the jury and from the Commonwealth's burden of proof." *Commonwealth* v. *Francis*, 411 Mass. 579, 581 (1992).

trial was substantially the same and need not be repeated here. We provide additional facts as they are pertinent.

*Discussion.* 1. *Jury waiver.* Before the start of his second trial, the defendant moved to waive a jury trial. The judge denied the motion on the basis of G. L. c. 263, § 6, which precludes defendants from waiving a jury trial in capital cases. The defendant now claims that the denial of his motion violated his equal protection and due process rights and that he should have been permitted to waive a jury trial.

Both the Federal and State Constitutions guarantee criminal defendants the right to be tried by a jury.[2] See art. III, § 2, of the United States Constitution; Sixth Amendment to the United States Constitution; art. 12 of the Massachusetts Declaration of Rights. However, neither the Federal nor the State Constitution provides the right to waive a jury trial. See *Singer* v. *United States*, 380 U.S. 24, 26 (1965) ("the Constitution neither confers nor recognizes a right of criminal defendants to have their cases tried before a judge alone"); *Commonwealth* v. *Millen*, 289 Mass. 441, 465, cert. denied, 295 U.S. 765 (1935) ("no constitutional right not to be tried by jury"). Moreover, "[t]he ability to waive a constitutional right does not ordinarily carry with it the right to insist upon the opposite of that right." *Singer* v. *United States, supra* at 34-35. Pursuant to G. L. c. 263, § 6, a defendant in Massachusetts may waive the right to a trial by jury, "other than [in] a capital case,"[3] provided the court consents to the waiver.

---

[2]Article III, § 2, of the United States Constitution guarantees jury trial in all criminal cases "except in cases of impeachment." See Sixth Amendment to the United States Constitution ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed"). However, there is no requirement of a jury for the trial of petty offenses. *Schick* v. *United States*, 195 U.S. 65, 70-71 (1904). Article 12 of the Massachusetts Declaration of Rights bars the Legislature from making any law that would "subject any person to a capital or infamous punishment, excepting the government of the army and navy" without providing for trial by jury.

[3]"Capital" denominates those cases in which upon conviction a sentence of life without the possibility of parole will be imposed. See *Dickerson* v. *Attorney Gen.*, 396 Mass. 740, 741 n.1 (1986) (defendants convicted of murder in first degree are referred to as "capital" defendants, although capital punishment is not currently recognized in Commonwealth). See also Mass. R. Crim. P. 2 (b) (3), 378 Mass. 844 (1979) (capital crime defined as "charge of murder in the first degree").

The defendant argues that the statutory bar to jury waiver in capital cases violates his right to due process and equal protection. We disagree. The United States Supreme Court has concluded that restrictions on jury waivers do not violate due process.

> "In light of the Constitution's emphasis on jury trial, we find it difficult to understand how the petitioner can submit the bald proposition that to compel a defendant in a criminal case to undergo a jury trial against his will is contrary to his right to a fair trial or to due process. A defendant's only constitutional right concerning the method of trial is to an impartial trial by jury. We find no constitutional impediment to conditioning a waiver of this right on the consent of the prosecuting attorney and the trial judge when, if either refuses to consent, the result is simply that the defendant is subject to an impartial trial by jury — the very thing that the Constitution guarantees him."

*Singer* v. *United States*, *supra* at 36. We have similarly held that trial by jury, "that ancient and valued mode of trial[,] cannot be said to lie outside the scope of due process of law." *Commonwealth* v. *Millen*, *supra* at 466.

Nor does the statute violate the equal protection provision. "Absent a showing that a statute burdens a suspect group or fundamental interest, it will be upheld as long as it is rationally related to the furtherance of a legitimate State interest . . . . The statute is presumed to be constitutional, . . . and will not be invalidated where any state of facts reasonably may be conceived to justify it." (Citations omitted.) *Dickerson* v. *Attorney Gen.*, 396 Mass. 740, 743 (1986). The guarantee of a jury trial is not a burden; thus, we examine for a rational purpose underlying the statute.

It is reasonable for the Legislature to treat defendants facing a charge of murder in the first degree differently from other defendants. Although the death penalty is no longer available, a conviction of murder in the first degree still carries a uniquely severe penalty, a sentence of life imprisonment without the possibility of parole. See G. L. c. 265, § 2. The State may not kill the defendant literally; nevertheless, his life is at stake in a case

of murder in the first degree in a way it is not where a lesser crime is charged. The Legislature has determined that, when a defendant chooses to go to trial in such a case, the facts must be found by a jury rather than by "one man." See *Commonwealth* v. *Millen, supra* at 466. It obviously has concluded that a jury, as the conscience of the community, rather than one person, should make these decisions. See *Commonwealth* v. *O'Brien,* 371 Mass. 605, 606-607 (1976) (special treatment of "capital crime," whether for purposes of jury waiver or review pursuant to G. L. c. 278, § 33E, shows Legislature's concern with "these most serious criminal cases" and should not be reformed by this court even where crime not punishable by death).[4] See also *Commonwealth* v. *Millen, supra* at 466 ("It is no sound constitutional objection to [G. L. c. 263, § 6,] that it gives to defendants in noncapital cases . . . a right to trial without jury while requiring capital cases to be tried by jury. . . . The statute in question makes only a reasonable classification in providing that a man's life shall not depend upon findings of fact made by one man").

The defendant also argues that a case cannot be considered a "capital" one for jury waiver purposes until after trial. His contention is that, although charged with murder in the first degree, he could be convicted of a lesser, noncapital offense. In other words, his claim is that one can only ascertain that a case is a capital one after the verdict. Our rules define "capital crime" as "a charge of murder in the first degree." Mass. R. Crim. P. 2 (b) (3), 378 Mass. 844 (1979). Our cases consider that it is the indictment that governs whether a charge is a capital offense. See *Commonwealth* v. *Coggins,* 324 Mass. 552, 556, cert. denied, 338 U.S. 881 (1949). Were we to adopt the defendant's reasoning, we could not determine until after the verdict whether he could waive a jury.

---

[4]The defendant suggests that judges may be "more receptive [than juries] to a [criminal] responsibility defense." The solution is to implement safeguards attempting to ensure that the jury in such a case will not be swayed by any such prejudices. We have attempted to do this. See, e.g., *Commonwealth* v. *Seguin,* 421 Mass. 243, 249 (1995), cert. denied, 516 U.S. 1180 (1996) (requiring individual voir dire of jurors on issue of insanity defense); *Commonwealth* v. *Mutina,* 366 Mass. 810, 822-823 & n.12 (1975) (requiring judge to instruct on postverdict consequences of acquittal by reason of insanity when defendant or jury so requests). Those procedures were followed in this case.

The defendant presses his argument by urging on us the definition of "capital case" in G. L. c. 278, § 33E. That statute provides that in any capital case the entire case is before this court for our "consideration of the law and the evidence," and that we may order a new trial or direct the entry of a lesser degree of guilt for various reasons, including "any . . . reason that justice may require." That statute defines "capital" for purposes of such plenary review only: "For the purpose of such review a capital case shall mean a case in which the defendant was tried on an indictment for murder in the first degree and was convicted of murder in the first degree." The "conviction" requirement has no application to the definition of "capital case" for purposes of G. L. c. 263, § 6.[5]

The defendant's argument that he should be permitted to waive a jury trial in a capital case was considered and rejected by this court in *Commonwealth* v. *O'Brien, supra.* There, we concluded that "the Legislature has classified that type of crime in which a jury waiver may not be accepted, and we are not disposed to engage in a reform of G. L. c. 263, § 6, along the lines which the defendant seeks. Any change in this conclusion must await action by the Legislature." *Id.* at 607. We continue to believe that there is no State constitutional right to waive a jury in capital cases. Whether a nonjury trial is available is a result of numerous policy considerations appropriate for the Legislature. As the defendant cannot identify a constitutional right to waive a jury, most of his arguments are policy matters suitable for legislative consideration.

---

[5]To the extent this court appeared to state otherwise in *Commonwealth* v. *O'Brien*, 371 Mass. 605, 606-607 (1976) ("It is thus our view that the § 33E definition of 'capital case' governs the meaning of that phrase in c. 263, § 6, at issue here"), the court obviously did not mean that for all purposes a capital case is only one in which there is both an indictment *and* a conviction of murder in the first degree. The court was describing the nature of the charge. Obviously, the additional requirement in § 33E that there be a conviction is inapplicable to the question whether there may be a jury waiver, as such waiver occurs prior to the trial.

At the time the *O'Brien* case was decided, G. L. c. 278, § 33E, applied in cases where there was a conviction of murder in the second degree as well as in the first degree. The statute has since been amended to apply only when there is a conviction of murder in the first degree. See St. 1979, c. 346, § 2. The amendment does not alter our analysis.

2. *The defendant's medical records.* The defendant claims that he was prejudiced by the trial judge's refusal to allow him to "winnow" the voluminous records of his psychiatric treatment and present to the jury only certain parts of the records. During trial, the prosecution suggested on several occasions that some of the reports contained in the records were inadmissible under G. L. c. 233, § 79, because they did not relate to diagnosis and treatment.[6] At one point, the judge instructed the Commonwealth to "present" to her the "objectionable" excerpts, rather than making a "blanket objection." Eventually, she ordered counsel to reach agreement on the portions of the record that could be admitted in evidence. On the last day of trial, the defendant offered excerpts from the medical records, and the prosecution objected to the scale of the deletions. The judge gave counsel an opportunity to redact references to the defendant's conviction and incarceration but refused to allow further editing of the medical records.

The defendant argues that the judge's insistence that the entire record be admitted was based on a misunderstanding of the medical records statute, G. L. c. 233, § 79. Any error has not been preserved. The defendant ultimately indicated that he was "content" with the medical records submitted to the jury. Thus, we review to determine whether the admission of the evidence created a substantial likelihood of a miscarriage of justice. *Commonwealth* v. *Murphy*, 426 Mass. 395, 402 (1998). Several of the judge's statements suggest that, barring agreement by counsel as to what could be excluded, she believed the statute required an all-or-nothing approach to admitting the records.[7] To the extent that the judge concluded that she had no discretion to exclude portions of the records, she was in error.

---

[6]General Laws c. 233, § 79, provides in relevant part:

> "Records kept by hospitals, dispensaries or clinics . . . may be admitted by the court, in its discretion, as evidence in the courts of the commonwealth so far as such records relate to the treatment and medical history of such cases and the court may, in its discretion, admit copies of such records, if certified by the persons in custody thereof to be true and complete; but nothing therein contained shall be admissible as evidence which has reference to the question of liability."

[7]For example, at one point, the judge asked defense counsel, "[Are you]

General Laws c. 233, § 79, is designed to accomplish two objectives. It establishes the authenticity of the medical records without requiring the presence of the keeper of the records. See *Commonwealth* v. *Gogan*, 389 Mass. 255, 263 (1983). It was enacted to relieve medical personnel from the "hardship and inconvenience of attending court as witnesses" to facts in the records relating to treatment and medical history. *Id.*, quoting *Leonard* v. *Boston Elevated Ry.*, 234 Mass. 480, 482 (1920). Because such records would ordinarily constitute hearsay, the statute also creates an exception to the hearsay rule that allows introduction of the records to prove the facts asserted therein. Once the records are delivered to the clerk's office, these two objectives are satisfied, and the records are treated as any other evidence. All or portions thereof may be offered in evidence by the proponent, subject to objection by the adverse party on any grounds other than authenticity and hearsay. Should a party offer only portions of the records, its adversary may object on completeness grounds and request a ruling that the other portions be admitted. See *Commonwealth* v. *Perry*, 385 Mass. 639, 643 (1982), *S.C.*, 424 Mass. 1019 (1997). In addition, the records are always subject to redaction where necessary. See *Commonwealth* v. *DiMonte*, 427 Mass. 233, 242 (1998) ("diagnosis" of assault in hospital records should have been redacted as reporting ultimate conclusion of crime charged). Should the defendant seek to cull the records so as to present only the evidence most favorable to his cause, the judge has "ample authority to protect [herself] and the Commonwealth from such manipulative behavior." *Commonwealth* v. *Perry*, *supra* at 643, quoting *Commonwealth* v. *Connor*, 381 Mass. 500, 506 n.6 (1980). Thus, the judge should not have treated the records as

going to introduce the whole record or are you just taking a piece of it out? Because that may give me problems." She also stated, "It's the pulling out of excerpt[s] that will be problematic if [the prosecutor] objects to it," and later, "What's received into evidence is in the custody of the clerk. And those are the medical records. For you to now breach that custody and pull out excerpts, I think[,] is in violation of the statute. Those are the medical records that were delivered to the custody of the clerk. And those are the medical records that go in as an exhibit." She concluded: "[Your] taking selected portions is not in compliance with the statute. Barring agreement by counsel, the exhibit consists of what was produced by the provider and turned over to the custody of the clerk's office. That's what the exhibit is, that's what — you're coming in under Section 79, that's what the statute says."

an indivisible unit that could be altered only by means of agreed-upon redactions.

The defendant has, however, pointed us neither to a specific item of inadmissible evidence that was given to the jury, nor to an item of admissible evidence that the jury were not allowed to see. His claim is rather that the jury, faced with a large amount of documentary evidence, simply disregarded the medical records.[8] We do not inquire into a jury's deliberative process. See *Commonwealth* v. *Kincaid,* 444 Mass. 381, 391 (2005), and cases cited. Even if the jury did not examine the documentary evidence, however, we conclude that it is unlikely that the defendant was harmed. There was ample testimony as to the defendant's psychiatric history, and there is nothing in the records that was not cumulative of that evidence. We conclude, therefore, that there was no substantial likelihood of a miscarriage of justice. See *Commonwealth* v. *Perry, supra* at 644.

3. *The prosecutor's closing argument.* The defendant maintains that the prosecutor's use of the phrase "justice delayed is justice denied" in his closing argument was improper. The defendant did not object to the phrase during trial; therefore, we review the argument to determine whether it created a substantial likelihood of a miscarriage of justice. *Commonwealth* v. *Mello,* 420 Mass. 375, 379-380 (1995). We consider the remarks in the context of the entire argument, and in light of the judge's instructions to the jury and the evidence at trial. *Commonwealth* v. *Yesilciman,* 406 Mass. 736, 746 (1990).

It is improper for a prosecutor to equate a guilty verdict with justice. See *Commonwealth* v. *Degro,* 432 Mass. 319, 328-329 (2000) (request to jury to "do your job," even though not explicitly stating "job" required reaching guilty verdict, was "not permissible advocacy"); *Commonwealth* v. *Deloney,* 59 Mass. App. Ct. 47, 53 (2003) (prosecutor's statement, "Now is the time for justice. Find him guilty," during closing created risk jury might think they had duty to convict). The statement should not have been made. In this case, however, the jury were

---

[8]The medical records submitted comprised approximately 1,000 pages. They were not submitted until after the jury had begun their deliberations. The jury returned a guilty verdict less than one hour after receiving the exhibits. The jury deliberated only two hours in total.

obviously aware that more than thirty years had passed since the murder. The statement came at the end of a lengthy closing argument and was followed by instruction from the judge that opening and closing arguments are not evidence. The judge had also twice stated at the start of the trial that closing arguments are not evidence. Viewed in this light, the use of the phrase did not create a substantial likelihood of a miscarriage of justice. See *Commonwealth* v. *Fitzgerald*, 376 Mass. 402, 421 (1978).

We review other aspects of the prosecutor's closing, to which the defendant did object, for prejudicial error. See *Commonwealth* v. *Rosario*, 430 Mass. 505, 515 (1999), quoting *Commonwealth* v. *Daggett*, 416 Mass. 347, 352 n.5 (1993). First, the defendant objected to the prosecutor's characterization of the shooting as "execution-style." In the context of the closing, this phrase described the shooting, specifically the fact that the victim had been shot several times in the back. It was therefore a permissible comment on the evidence. See *Commonwealth* v. *Degro*, *supra* at 327-328, quoting *Commonwealth* v. *Freeman*, 430 Mass. 111, 120 (1999) (describing murder weapon as "butcher knife" was "enthusiastic rhetoric" that did not cross over into improper argument).

The defendant also objected to what he alleges was burden-shifting language regarding the lack of eyewitness testimony to refute the defendant's version of the shooting and to the absence of "real" evidence of any mental illness. We see no impropriety. The first comment, that the defendant "killed the only other person there to contradict him," simply highlighted the inconsistencies in the defendant's accounts of his memory of the shooting. Furthermore, given that what was at issue was the defendant's state of mind, it is unlikely that this statement had any significant effect on the verdict. See *Commonwealth* v. *Viriyahiranpaiboon*, 412 Mass. 224, 232 (1992) (even if allegedly burden-shifting comments were improper, defendant must show effect on jury was sufficiently prejudicial to merit reversal).

As for the prosecutor's assertion that there was no real evidence of the defendant's mental illness, in context, this statement was merely comment on the evidence put before the jury, not a reflection on the absence of evidence, which might be improper, see *Commonwealth* v. *Silanskas*, 433 Mass. 678, 701 (2001). It

referred to the evidence the defendant did produce. See *Commonwealth* v. *Moore*, 408 Mass. 117, 128 (1990) (comment on unbelievability of defendant's account did not shift burden of proof). The remark did not suggest that the defendant had any burden to produce evidence, but rather asserted that the evidence he did produce did not prove he was mentally ill, and that the jury therefore did not need to reach the question whether the defendant was criminally responsible.

That the defendant was not mentally ill on the night in question is a fair inference from the evidence, and the prosecutor was entitled to invite the jury to draw that inference. Testimony showed that the defendant concealed the gun from the victim before he shot her, fled after the murder, and hid the gun during his flight. Shortly after the murder, he called a colleague to explain that he would be absent from work for some time and to ask him to inform his mother that he was all right. He later made a plan to surrender to authorities and disposed of the gun before surrendering. In addition, several witnesses testified that the defendant appeared completely normal in the hours just before the murder. Furthermore, the judge's instructions made clear that it was the Commonwealth's burden to prove that the defendant was criminally responsible, and that the defendant was not required to prove anything.

Finally, the defendant maintains that the prosecutor misstated the law of criminal responsibility and thereby improperly shifted the burden of proof. In what appears to have been an attempt to provide a shorthand definition of criminal responsibility, the prosecutor made the following comment:

> "If he's got such a serious mental illness — and that's what it's got to be for him to be found not guilty by reason of insanity — serious mental disease or defect. Not just some mental problems. Serious to the point where he is incapacitated. He is not responsible for his actions."

The defendant objected immediately, and the judge told the jury, "Members of the jury, I will be instructing you on the exact wording of this definition." The prosecutor then defined criminal responsibility fully. Later, in her charge, the judge gave an extensive and accurate instruction on the law of criminal

responsibility. See *Commonwealth* v. *Silanskas, supra* at 702 (jury are presumed to follow judge's instructions). To the extent the prosecutor's original formulation was not a full or accurate definition of criminal responsibility, no further cure was required.

The defendant claims also that the prosecutor's statement on criminal responsibility shifted the burden of proof. The defect in the remark was that it was a truncated statement of the criteria for determining criminal responsibility. It suggested nothing regarding the Commonwealth's burden of proof. In any event, the judge's criminal responsibility instruction repeatedly placed the burden of proof on the Commonwealth.

4. *Relief pursuant to G. L. c. 278, § 33E.* We have considered the entire record pursuant to our obligation under G. L. c. 278, § 33E. We see no reason to exercise our authority to reduce the jury's verdict or to order a new trial. The defendant received a fair trial; the jury were warranted in finding that the Commonwealth had proved beyond a reasonable doubt that the defendant was criminally responsible, and that he acted with deliberate premeditation and with extreme atrocity and cruelty.

*Judgment affirmed.*