## COMMONWEALTH *vs.* ERNEST N. BENJAMIN.

Plymouth. November 2, 1999. - January 28, 2000.

Present: MARSHALL, C.J., ABRAMS, LYNCH, GREANEY, IRELAND, SPINA, & COWIN, JJ.

*Jury and Jurors. Constitutional Law,* Jury, Vagueness of statute. *Practice, Criminal,* Jury and jurors, Instructions to jury, Capital case. *Homicide. Evidence,* Reputation, State of mind. *Mental Impairment. Malice.*

At the trial of a capital case, where the judge followed the applicable jury selection procedure under G. L. c. 234A, § 16, there was no merit to the defendant's claim that the judge violated the (inapplicable) provisions of G. L. c 234, §§ 17 & 25. [675-676]

At the trial of an indictment, there was no error in the judge's refusal to empanel a specific juror, the only person of the defendant's race in the jury pool, at the defendant's request and without regard for the random selection required by G. L. c. 234A, § 16. [676-677]

No reason appeared for this court to reconsider its decision in *Commonwealth v. Freiberg,* 405 Mass. 282, 288-292, cert. denied, 493 U.S. 940 (1989), considering a constitutional challenge to the phrase "extreme atrocity or cruelty," or to reconsider its decision in *Commonwealth v. Hunter,* 427 Mass. 651, 657 (1998), declining to impose a jury unanimity requirement on which of the *Cunneen* factors (*Commonwealth v. Cunneen,* 389 Mass. 216, 227 [1983]) underlie a verdict of extreme atrocity or cruelty. [677]

At a murder trial, the judge did not err in excluding evidence of the victim's reputation, in circumstances in which the defendant did not raise the defense of self-defense [677-679] and in which there was no other reason for such evidence to have been admissible [679].

At a murder trial, the judge's instruction to the jury, that mere words are not sufficient to provide adequate provocation to reduce a homicide from murder to manslaughter, was not erroneous, and the evidence did not warrant an instruction that, in certain limited circumstances, words may convey information constituting adequate provocation. [679-680]

At a murder trial, no substantial likelihood of a miscarriage of justice was created by the judge's instructions to the jury on the inference of malice that might be drawn from the intentional use of a dangerous weapon, considering the neutral and unbiased charge as a whole. [681-682]

INDICTMENT found and returned in the Superior Court Department on September 25, 1995.

The case was tried before *John A. Tierney,* J.

*Murray A. Kohn* (*Alan D. Campbell* with him) for the defendant.

*Robert C. Thompson*, Assistant District Attorney, for the Commonwealth.

ABRAMS, J. The defendant, Ernest N. Benjamin, appeals from his conviction of murder in the first degree on the theory of extreme atrocity or cruelty. He challenges the jury selection process and contends that the standard for determining extreme atrocity or cruelty is unconstitutionally vague. He also claims that the judge erred by prohibiting him from questioning a witness as to the victim's reputation for violence. He argues error in the jury instructions because the judge (a) failed to instruct the jury that words could convey information constituting adequate provocation to mitigate an unlawful homicide to manslaughter and (b) informed the jury that they could infer malice from the intentional use of a deadly weapon. Finally, he requests relief pursuant to G. L. c. 278, § 33E. We conclude that the conviction should be affirmed and that there is no reason to grant the defendant a new trial or to enter a verdict of a lesser degree of guilt pursuant to G. L. c. 278, § 33E.

We recite the evidence in the light most favorable to the Commonwealth. *Commonwealth* v. *Salemme*, 395 Mass. 594, 595 (1985). On July 30, 1995, the victim died after being struck by four bullets and grazed by two others at approximately 8:30 P.M. in Brockton.

The victim lived in Boston, but regularly traveled to Brockton to visit his girl friend, Natasha Nelson. The victim and the defendant both sold cocaine. The defendant had purchased cocaine from the victim twice. The first time the defendant purchased cocaine from the victim, the defendant did not pay full price. At trial, the defendant indicated that the victim pressured him to pay him the amount owed. He also testified that he paid the victim in full when he made his second purchase, a few days before the victim was killed.

On the afternoon of July 30, 1995, Nelson went to a cookout in Brockton. The defendant attended the cookout, but the victim did not. The victim met Nelson across the street from the cookout. The defendant then confronted the victim and, according to Nelson's testimony, said, "You and your girl can't be out here [selling drugs] on my block." The victim denied selling drugs and began to walk away. The defendant testified that the victim then said that he was going to come back and kill the defendant. Nelson testified that she never heard the victim threaten the defendant.

The defendant pulled out a gun, fired at the victim, paused, and then continued to fire. Nelson testified that the defendant had the gun, but the defendant testified that he took it from a friend. The defendant claimed that he closed his eyes as he fired. He testified that, after firing a few shots, he opened his eyes, saw the victim walking, and began firing again. The defendant testified that he meant to cause serious injury, but not to kill the victim.

After shooting the victim, the defendant saw the victim fall to the ground and ran to him. Then the defendant got into a friend's vehicle. In the vehicle, the defendant put the gun to his own head and pulled the trigger, but the gun did not fire. According to the defendant's brief, the next day the defendant learned that the victim died. The defendant then went to Puerto Rico. He returned several weeks later, turned himself into the Brockton police, and gave a statement to them.

1. The defendant raises two claims regarding the jury selection process. Before reviewing each of these claims, we note that "[w]e afford a trial judge a large degree of discretion in the jury selection process." *Commonwealth* v. *Vann Long*, 419 Mass. 798, 803 (1995). See *Commonwealth* v. *Amazeen*, 375 Mass. 73, 83 (1978).

a. The defendant alleges that the judge failed to follow the statutory requirements of G. L. c. 234, §§ 17 and 25. According to the defendant, jurors were called "in a predictable numerical sequence."[1] The defendant made no objection to the procedure at trial. On appeal, the defendant argues that this procedure was not neutral and resulted in the exclusion of members of the defendant's race from the jury, thereby violating the defendant's rights under the Federal and State Constitutions.

The defendant's allegation that the judge (or clerk) violated G. L. c. 234 must be considered in light of the applicability of G. L. c. 234A. Both G. L. c. 234 and G. L. c. 234A provide procedures for selecting jurors. See *Commonwealth* v. *Ptomey*, 26 Mass. App. Ct. 491, 495 (1988) (by order of Supreme Judicial Court dated December 12, 1984, G. L. c. 234A controlled jury selection of trials in Plymouth County). Section 1 of G. L. c. 234A provides that, "[w]henever any section of this chapter shall become applicable within a participating county, all provisions of law which are inconsistent with such

---

[1]Neither party explains the process actually used to seat jurors.

section shall cease to be effective within such participating county." Thus, to the extent that G. L. c. 234, §§ 17 and 25, conflict with provisions in G. L. c. 234A, they are inapplicable.

General Laws c. 234, § 17, and G. L. c. 234A, § 16, address the process to be used for summoning jurors. General Laws c. 234, § 17, requires that jurors be selected from a box containing prospective jurors' names. Section 16 of G. L. c. 234A requires the office of jury commissioner to shuffle the master juror list randomly, store the final list electronically, and summon jurors in sequence from the shuffled list. Because G. L. c. 234, § 17, is inconsistent with provisions of G. L. c. 234A, it is not effective in any county in which G. L. c. 234A is applicable, including Plymouth County. Thus, the defendant's allegation that the judge violated G. L. c. 234, § 17, has no merit.

The defendant argues that the judge did not comply with G. L. c. 234, § 25. General Laws c. 234, § 25, does not apply to capital cases. General Laws c. 234, § 26, does.[2] We do not agree that there was error. Under G. L. c. 234A, § 16, the office of jury commissioner is required to shuffle the master list of prospective jurors randomly and to store the list electronically. The office of jury commissioner is required to summon jurors in sequence from this randomly shuffled list, G. L. c. 234A, § 16, and to provide the trial court with a list of jurors expected to appear. G. L. c. 234A, § 17. In these circumstances, there is no error in the judge's calling names in succession from the randomly shuffled list.

b. Next, the defendant notes that trial counsel suggested that the racial imbalance be remedied by empanelling the only person of the defendant's race who was in the jury pool. The prosecutor did not oppose this suggestion, but the judge did not allow it. The defendant argues that the judge's refusal constituted an abuse of discretion because it deprived the defendant of the opportunity to remedy the racial imbalance.

The defendant's complaint has no merit. A judge cannot ignore procedural requirements governing the jury selection

---

[2]General Laws c. 234, § 26, states in part: "If a jury is to be empanelled for the trial of a capital case, the clerk of the court shall cause the name of each juror summoned therein to be written on a separate ballot and each ballot to be folded uniformly in such manner that the name written thereon shall not be visible, and shall cause such ballots to be placed in a box provided therefor. He [or she] shall then in open court draw the ballots in succession from said box . . . ."

process in an attempt to include members of a particular race on the jury. "[W]e recognize that the right to a jury representative of a cross section of the community cannot require that each jury include constituents of every group in the population." *Commonwealth* v. *Soares*, 377 Mass. 461, 481, cert. denied, 444 U.S. 881 (1979). There was no error in the judge's refusal to empanel a specific juror without regard for random selection.

3. The defendant challenges the constitutionality of G. L. c. 265, § 1, claiming that the phrase "extreme atrocity or cruelty" is vague and thus violates the due process guarantees of the Fifth and Fourteenth Amendments to the United States Constitution and arts. 10 and 12 of the Massachusetts Declaration of Rights. We repeatedly have upheld this concept in the face of constitutional challenges for vagueness. See, e.g., *Commonwealth* v. *Blake*, 409 Mass. 146, 163 (1991); *Commonwealth* v. *Freiberg*, 405 Mass. 282, 288-290, cert. denied, 493 U.S. 940 (1989). For reasons we discussed fully in *Commonwealth* v. *Freiberg, supra*, G. L. c. 265, § 1, is not unconstitutionally vague. See *Commonwealth* v. *Blake, supra* at 163.

The defendant also contends that jurors must unanimously decide which *Cunneen* factors[3] are present in a particular case to pass the constitutional hurdle. *Commonwealth* v. *Cunneen*, 389 Mass. 216, 227 (1983). "[W]e have never required that the jury unanimously agree on which of the *Cunneen* factors underlie their verdict of extreme atrocity or cruelty." *Commonwealth* v. *Hunter*, 427 Mass. 651, 657 (1998). For reasons discussed in *Commonwealth* v. *Hunter, supra* at 657-658, we again decline to impose the requirement of unanimity.

4. The defendant argues that evidence of the victim's reputation was improperly excluded. The kernel of the defendant's argument is that the defendant's state of mind is a key trial issue because it is determinative whether the defendant could have committed murder in the first degree by reason of extreme atrocity or cruelty. The defendant contends that evidence of the

---

[3]"Factors the jurors are to consider in determining whether a murder was committed with extreme atrocity or cruelty are: the defendant's indifference to or taking pleasure in the victim's suffering, consciousness and degree of suffering of the victim, extent of physical injuries, number of blows, manner and force with which they were delivered, instrument employed, and disproportion between the means needed to cause death and those employed." *Commonwealth* v. *Hunter*, 427 Mass. 651, 656 n.8 (1998), citing *Commonwealth* v. *Cunneen*, 389 Mass. 216, 227 (1983).

victim's reputation "corroborates" the defendant's testimony about his state of mind.

According to the defendant, his state of mind must be considered in light of his mental impairment.[4] The defendant contends that his mental impairment was exacerbated by the victim's threat.[5] The defendant asserts that, because of the exacerbation of his mental impairment, he had a distorted perception of and response to the victim's threat. Further, the defendant contends that, due to his distorted perceptions, he did not appreciate the risks of his actions. Thus, the defendant concludes, the jury should have had the reputation evidence to determine the defendant's state of mind when the crime was committed.

The judge did not err in excluding evidence of the victim's reputation.[6] In general, evidence of a victim's character is not admissible in a criminal case. There is an exception to this general rule when the defendant raises the issue of self-defense. When self-defense is raised, evidence that the victim was "powerful, dangerous, quarrelsome or violent" is admissible. *Commonwealth* v. *Rubin*, 318 Mass. 587, 588 (1945). See *Commonwealth* v. *Fontes*, 396 Mass. 733, 735 (1986). Trial counsel must show that the defendant knew of the victim's reputation for violence at the time he acted. *Id.*[7] When such evidence is admitted, it can be used only for the limited purpose of showing

---

[4]The defendant, in his brief, insists that he suffers from posttraumatic stress disorder (PTSD). However, as the Commonwealth notes, nothing in the record indicates that the defendant suffers from PTSD. The doctor who testified stated that the defendant had "a heightened level of vigilance" and analogized to PTSD, but never said that the defendant suffered from PTSD.

[5]On appeal, the defendant also alleges that the victim had threatened him a few days prior to the victim's death and that this threat caused the defendant to be more sensitive to the victim's second threat. However, the record indicates that someone with the same street name as the victim threatened the defendant on Newbury Street in Boston a few days before the victim's death, and the defendant clearly testified at trial that the person who threatened him in Boston was not the victim.

[6]The judge also excluded the evidence because the question was not proper. Character, if properly an issue, may be "shown only through evidence of general reputation . . . . Personal opinions and isolated acts are not evidence of general reputation." *Commonwealth* v. *Roberts*, 378 Mass. 116, 129 (1979).

[7]Rule 404 (a) (2) of the Federal Rules of Evidence and rule 404 (a) (2) of the Proposed Massachusetts Rules of Evidence do not impose a requirement of knowledge on the part of the defendant. See *Commonwealth* v. *Dilone*, 385 Mass. 281, 286 n.1 (1982).

the defendant's "apprehension for his own safety, and the reasonableness of that apprehension." *Commonwealth* v. *Edmonds*, 365 Mass. 496, 501 (1974), quoting *Commonwealth* v. *Rubin, supra*. Here, there was no claim of self-defense. Therefore, evidence of the victim's reputation is not admissible under this exception to the general rule.

The defendant suggests that evidence of the victim's reputation should be admissible under a new theory, one which was not raised at trial. Essentially, the defendant asks that, when the Commonwealth is prosecuting a defendant charged with murder in the first degree based on a theory of extreme atrocity or cruelty and the defense is mental impairment, evidence of the victim's reputation be admissible to show its effect on the defendant's state of mind and to corroborate the defendant's testimony or that of the expert.[8] We reject the defendant's invitation to incorporate this proposal into our jurisprudence. The defendant may place his state of mind and its impairment before the jury through expert testimony and, if he or she so chooses, the defendant's own testimony. Here, the defendant could not have a reasonable apprehension of his own safety because he knew the victim did not have a gun. Permitting the defendant to present evidence of his perception of the victim's character and the effect it had on him poses the risk that "[n]egative information about the victim may divert the jury from focusing on their basic task by causing them . . . to consider the victim's character and worth . . . ." *Commonwealth* v. *Fontes, supra* at 736.

5. The defendant alleges that the judge made two errors in instructing the jury.

a. The defendant contends that the judge committed error by refusing his requested instruction on voluntary manslaughter. The judge instructed the jury: "Ordinarily words are not sufficient to provide adequate provocation to reduce a homicide from murder to manslaughter. The provocation is deemed adequate in law if it is of such a nature that is likely to produce in an ordinary person an abnormal state of mind resulting from the transport of the passions, such as fear, anger, or flight." The

---

[8]The defendant also asserts that he is entitled to this evidence because it corroborates a police officer's testimony as to the victim's reputation. The police officer, however, did not testify as to the victim's reputation. He testified as to what the defendant said to the police after turning himself in. In effect, the defendant seeks to corroborate himself.

defendant does not challenge this instruction, but argues that it was incomplete because it failed to instruct the jury that words may convey information constituting adequate provocation to render an unlawful killing voluntary manslaughter. The defendant states that trial counsel proposed a more complete instruction.[9]

The judge's instruction, without more, was not erroneous. The instruction, as given, was similar to the language set forth in the Model Jury Instructions on Homicide.[10] The defendant is correct in that, in certain circumstances, words may convey information constituting adequate provocation to render an unlawful killing voluntary manslaughter. See, e.g., *Commonwealth* v. *Estremera*, 383 Mass. 382, 392 (1981); *Commonwealth* v. *Schnopps*, 383 Mass. 178, 181 (1981), *S.C.*, 390 Mass. 722 (1984); *Commonwealth* v. *Bermudez*, 370 Mass. 438, 441-442 (1976). However, this is a very limited exception. The exception applies where the statements constitute a "peculiarly immediate and intense offense to [one's] sensitivities." *Commonwealth* v. *Bermudez, supra* at 441-442.

The defendant knew the victim did not have a gun. A threat to inflict serious bodily injury or to kill in the future is not an immediate offense to a person's sensitivities. *Id.* The defendant knew that the victim would have to go to Boston to get a gun. There was, therefore, no immediate threat. The limited exception does not apply to the facts of this case.

The defendant also claims that the victim's words had an exaggerated effect because of the defendant's alleged mental impairment. The defendant's expert testified that the defendant had the capacity to appreciate that what he had done was wrong on the night that he shot the victim. According to the expert, the defendant had the capacity to make choices, but might be quicker than people who are not hypervigilant to react to a threat. The expert also testified that the defendant was not psychotic, hallucinating, or delusional when he shot the victim. We decline to extend the limited exception to our general rule that words alone are not adequate provocation to those cases in which a defendant claims he or she was mentally impaired or impaired by drugs or alcohol and therefore words alone are suf-

[9]The record does not contain a copy of this proposed instruction.

[10]The Model Jury Instructions on Homicide (1999) provide that "[m]ere words, no matter how insulting or abusive, standing alone do not constitute reasonable provocation." *Id.* at 28.

ficient provocation. The judge did not err in refusing to instruct on voluntary manslaughter.

b. The defendant argues that the judge's instruction allowing an inference of malice from the defendant's intentional use of a dangerous weapon was unfair.[11] The defendant concedes that malice may be inferred from the intentional use of a dangerous weapon. See, e.g., *Commonwealth* v. *Roderick*, 429 Mass. 271, 277 (1999); *Commonwealth* v. *Pierce*, 419 Mass. 28, 38 (1994); *Commonwealth* v. *Albert*, 391 Mass. 853, 860 (1984). However, the defendant contends that the instruction unfairly focused the jury's attention on this single piece of evidence, to the detriment of other, exculpatory, evidence.

The defendant did not object to the instruction. Although the absence of any objection is relevant, *Commonwealth* v. *Fluker*, 377 Mass. 123, 131 (1979), we review the instructions to determine whether there is a substantial likelihood that a miscarriage of justice has occurred. *Commonwealth* v. *Ruddock*, 428 Mass. 288, 292 n.3 (1998). See *Commonwealth* v. *Perry*, 385 Mass. 639, 647 (1982).

"The defendant claims that the judge's charge, with its emphasis on the [defendant's use of a dangerous weapon], stated a one-sided view of the case and gave the jurors a distorted picture of what was at issue. In making his argument, he selects those portions of the instructions which support his claim. However, '[e]rror in a charge is determined by reading the charge as a whole, and not by scrutinizing bits and pieces removed from their context.' " *Id.*, quoting *Commonwealth* v. *Cundriff*, 382 Mass. 137, 153 (1980), cert. denied, 451 U.S. 973 (1981).

The instructions, when read as a whole, were neutral and unbiased. The judge twice instructed the jury that they could infer malice from the use of a dangerous weapon. Immediately after giving this instruction, the judge instructed the jury to consider the defendant's mental condition on the day of the murder. He instructed the jury that the defendant's mental condition could affect his ability or capacity to form the specific intent to kill the victim.

"Considering the charge in its entirety, and in relation to the

---

[11]The judge provided the instruction twice: "Malice may be inferred — it does not have to be — from the intentional use of a dangerous weapon," and "malice may be inferred — it need not have to be — from the intentional use of a dangerous weapon."

whole record, it did not 'stress or argue a particular side on an issue to the jury,' *Commonwealth* v. *Harris*, 376 Mass. 201, 208 (1978), nor was there 'such preponderance of attention to the prosecution's case as might mislead the jury to the defendant's prejudice.' *Commonwealth* v. *Therrien*, [371 Mass. 203,] 206-207 [(1976)]." *Commonwealth* v. *Perry*, *supra* at 647-648.

6. We have reviewed the entire record under our obligation under G. L. c. 278, § 33E, and conclude that the defendant is not entitled to a new trial or entry of a lesser degree of guilt.

*Judgment affirmed.*