## COMMONWEALTH *vs.* PRINCE MOSES.

Suffolk. January 11, 2002. - April 26, 2002.

Present: MARSHALL, C.J., SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Homicide. Practice, Criminal,* Capital case, Required finding, Impeachment by prior conviction, Instructions to jury, Comment by judge. *Evidence,* Dying declaration, Prior conviction. *Intoxication. Constitutional Law,* Vagueness of statute. *Due Process of Law,* Vagueness of statute. *Jury and Jurors.*

At the trial of indictments charging murder in the first degree on a theory of extreme atrocity or cruelty, the judge properly denied the defendant's motion for a required finding of not guilty, where there was sufficient evidence to prove a significant disproportion between the means necessary to cause death and those used, as well as a significant number of extensive wounds. [601]

At a murder trial, the judge did not err in admitting as a dying declaration the victim's statement identifying the defendant as his assailant, where the victim's belief that death was imminent could be inferred from the nature of the victim's injury and the victim's conduct. [601-602]

Although it was error to deny the defendant at a murder trial the opportunity to impeach the victim's credibility by evidence that would have been admissible if the victim had testified, the error was harmless, where the victim's dying declaration identifying the defendant as his assailant was merely cumulative of another witness's testimony, and where the defendant conceded the point by testifying that he had shot the victim in self-defense. [602-603]

The judge at a murder trial correctly refused to instruct the jury on voluntary intoxication, where, although there was evidence that the defendant had been drinking and smoking marijuana, there was nothing to support an inference that, at the time of the killing, intoxication impaired the defendant's ability to form any requisite criminal intent. [603]

Considering the charge at a murder trial as a whole and in light of the entire record, the judge did not improperly comment on the Commonwealth's evidence or offer his opinion regarding the defendant's guilt. [603-605]

This court repeated its holdings that G. L. c. 265, § 1, defining murder in the first degree, is not unconstitutionally vague, and that a conviction of murder by reason of extreme atrocity or cruelty in the absence of jury unanimity does not violate due process, because the factors underlying the theory of extreme atrocity or cruelty are neither elements of the crime nor separate theories of culpability, but "evidentiary considerations" that guide a jury in determining whether a murder was committed with extreme atrocity or cruelty. [605-607]

INDICTMENTS found and returned in the Superior Court Department on February 23, 1996.

The cases were tried before *James D. McDaniel, Jr.,* J.

*Donald A. Harwood* for the defendant.

*Brian J.S. Cullen,* Assistant District Attorney, for the Commonwealth.

SPINA, J. The defendant, Prince Moses, was convicted of murder in the first degree on theories of deliberate premeditation and extreme atrocity or cruelty. He also was convicted of unlawful possession of a firearm and unlawful possession of ammunition. On appeal he claims that the trial judge erred by (1) denying his motion for a required finding of not guilty; (2) admitting evidence of the victim's statements as dying declarations; (3) excluding the victim's prior convictions for purposes of impeachment; (4) refusing to instruct on intoxication; and (5) improperly commenting on the evidence in his instructions. The defendant also asks us to revisit the question of the constitutionality of the theory of extreme atrocity or cruelty as the basis for a conviction of murder in the first degree. Finally, he asks us to reduce his convictions under G. L. c. 278, § 33E. We affirm the convictions, and decline to exercise our power under G. L. c. 278, § 33E.

1. *Facts.* The jury could have found the following facts. On February 5, 1996, Godfrey Jenkins and Kenneth Wallace spent much of the evening at the apartment of Jenkins's sister (Michelle Jenkins) in the Dorchester section of Boston playing video games, listening to music, and drinking beer. Later Jenkins and Wallace decided to go to the defendant's apartment in the Roxbury section of Boston, where Jenkins planned to purchase a "quarter" ($250 worth) of crack cocaine. Wallace had known the defendant for two or three years. Carlos Gonzalez, Michelle's boy friend, drove them. He waited in the car while Jenkins and Wallace went to meet the defendant. Jenkins gave the defendant $250 for a "quarter" of crack cocaine. The defendant said they would have to wait because he needed to page someone.

Wallace and Jenkins waited for the defendant downstairs in a glass enclosed catwalk. After waiting twenty minutes, they returned to the apartment and Jenkins knocked on the door

again. The defendant's sister answered the door and told them that the defendant was not there. They returned to the catwalk and continued to wait. After another twenty minutes they tried, unsuccessfully, to page the defendant. They returned to the defendant's apartment and knocked on the door. The defendant's sister answered and told Jenkins that his business with the defendant did not concern her and that he should stop knocking because there were children in the apartment. They returned to the catwalk to wait. Gonzalez eventually grew tired of waiting and left. Wallace and Jenkins again returned to the defendant's apartment and Jenkins knocked on the door. The defendant came to the door and told Wallace and Jenkins to wait downstairs and he would be out.

The defendant had become increasingly upset by Jenkins's insistence. He obtained a semiautomatic .22 caliber pistol from his room, changed his clothes, and said, "He's not going to come here disrespecting my house like that. . . . I'm gonna take care of him. . . . I'm going to shoot him." The defendant went to the opposite end of the hallway leading to the catwalk and called to Wallace. As Wallace approached, he saw that the defendant was carrying a .22 caliber Luger pistol that he had previously shown to him. Wallace "froze." The defendant told him to step aside, and raised the gun. On seeing this Jenkins raised his hands and said, "All I want is my money back." He repeated his plea two or three times. The defendant then fired at least seven shots at Jenkins, hitting him four times. Two wounds were potentially fatal.

Wallace ran to his aunt's apartment, which was located nearby. He told his cousin that the defendant had just shot Jenkins, and he telephoned for an ambulance. Police and emergency personnel arrived shortly thereafter and found Jenkins lying in the hallway. He was in pain, frightened, bleeding, and asking for oxygen. An emergency medical technician frisked Jenkins for weapons, but she found none. Jenkins asked her if he were going to die. She told him that it did not look good and that if he had something to say, he should say it. Jenkins said that "Prince" shot him. Jenkins was taken to Boston City Hospital, where he underwent surgery. He died the next day.

At trial, the defendant admitted that he shot Jenkins but

claimed that he had acted in self-defense. He said that, after Jenkins brandished a gun in the hallway and attempted to rob him, he in turn pulled his gun.[1] He claimed that Jenkins then started shooting at him and he returned the fire. The defendant claimed that Wallace took Jenkins's gun and they both fled.

2. *Motion for a required finding.* The defendant argues that the evidence was insufficient as matter of law to sustain a conviction for murder on a theory of extreme atrocity or cruelty, and that his motion for a required finding of not guilty should have been allowed. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-678 (1979). He contends that, because there was no evidence "that the defendant tortured, maimed, or took pleasure in the [decedent's] death or in his pain," the judge erred in submitting the case to the jury on a theory of extreme atrocity or cruelty. The relevant inquiry, however, is whether there exists one or more of the factors we identified in *Commonwealth* v. *Cunneen*, 389 Mass. 216, 227 (1983).

Here, there was evidence to support a number of the *Cunneen* factors, including "extent of physical injuries, number of blows, . . . and disproportion between the means needed to cause death and those employed." *Id.* After Jenkins, who was not armed, raised his arms in a gesture of surrender and said that he only wanted his money returned, the defendant shot at him seven times, hitting him four times. Two wounds were potentially fatal. The evidence was sufficient to prove a "significant disproportion between the means necessary to cause death and those used, as well as a significant number of extensive wounds." *Commonwealth* v. *Patterson*, 432 Mass. 767, 773-774 (2000). Cf. *Commonwealth* v. *Little*, 431 Mass. 782, 783, 785 (2000) (that defendant fired seven shots from semiautomatic handgun in rapid succession at victim was sufficient to support malice necessary under theory of extreme atrocity or cruelty). The motion for a required finding of not guilty was properly denied.

3. *Dying declaration evidence.* The defendant claims that the

---

[1]In the Commonwealth's case-in-chief, Tennille Davis, the defendant's girl friend at the time, testified that, when Jenkins and Wallace first arrived, she and the defendant were in his bedroom listening to music. When the defendant returned to the bedroom, he told Davis that he had "just took his $250."

judge erred by admitting as a dying declaration Jenkins's statement identifying the defendant as his assailant. Specifically, the judge admitted, over the defendant's objection, Jenkins's statement to the emergency medical technician that "Prince" had shot him. The defendant argues that there was an inadequate foundation to suggest that Jenkins believed at the time that he was going to die imminently and that he died shortly thereafter. See Commonwealth v. Key, 381 Mass. 19, 22-23 (1980); P.J. Liacos, Massachusetts Evidence § 8.6, at 486-488 (7th ed. 1999).

A victim's belief that death is impending may be inferred from the nature of the victim's injury and the victim's conduct. See Commonwealth v. Niemic, 427 Mass. 718, 724 (1998). Jenkins had been shot four times shortly before making the statement. Two bullets had pierced his chest, one of which had lodged in his spine. When police and emergency personnel arrived, he was "very frightened," grimacing in pain, bleeding, and asking for oxygen. He asked a treating emergency medical technician if he were going to die. She told him that "it didn't look too good" for him. In the circumstances, it was not error for the judge to find that Jenkins believed at the time he made the statements that death was imminent. See Commonwealth v. Key, supra at 25. That Jenkins initially may have responded well to treatment and did not die until the next day does not require a different result. See Commonwealth v. Niemic, supra at 723-724.

4. Impeachment evidence. The defendant claims that, because Jenkins's dying declaration was admitted, he was entitled to impeach that testimony with Jenkins's prior convictions of assault and battery and violation of a protective order, and the judge erred by precluding him from doing so. The defendant relies on Commonwealth v. Sellon, 380 Mass. 220, 224 n.6 (1980), quoting 3A J. Wigmore, Evidence § 884 (Chadburn rev. 1970), where we stated: "Where an exception to the hearsay rule allows the admission of a statement by an out-of-court declarant, this statement is subject 'to impeachment in the appropriate ways.'"

It was error to deny the defendant the opportunity to impeach Jenkins's credibility by evidence that would have been admis-

sible if Jenkins had testified, namely, evidence of his prior convictions. See Proposed Mass. R. Evid. 806.[2] See also *Commonwealth* v. *Mahar*, 430 Mass. 643, 648-650 (2000); *Commonwealth* v. *Pina*, 430 Mass. 66, 74-77 (1999). The error, however, was harmless. The evidence that the defendant sought to discredit went to the question of the identity of Jenkins's shooter. Jenkins's dying declaration was merely cumulative of Wallace's testimony, and the defendant conceded the point by testifying that he shot Jenkins in self-defense.

5. *Failure to instruct on voluntary intoxication.* The judge refused to instruct the jury on voluntary intoxication, as requested by defense counsel. The defendant argues that this was error, pointing to evidence that the defendant had been drinking and smoking marijuana on the night in question. "An instruction on voluntary intoxication is not required absent evidence of 'debilitating intoxication.' " *Commonwealth* v. *Chaleumphong*, 434 Mass. 70, 78 (2001), quoting *Commonwealth* v. *Erdely*, 430 Mass. 149, 152 (1999). No evidence was introduced to demonstrate how much or how long the defendant had been drinking on the night in question, or what effect it had on him. Although the defendant testified that he was "drinking and smoking weed," a fact corroborated by other witnesses,[3] there was nothing to support the inference that, at the time of the killing, intoxication impaired the defendant's ability to form any requisite criminal intent. *Id.* The defendant had no difficulty accounting for his actions and emotions on the night in question. His clear recollection of events at trial belies his claim on appeal that he was debilitated at the time. The judge correctly refused to instruct on voluntary intoxication.

6. *Comments during deliberate premeditation instruction.* The defendant argues that the judge unfairly commented on the

_____

[2]Rule 806 of the Proposed Massachusetts Rules of Evidence states in relevant part: "When a hearsay statement . . . has been admitted in evidence, the credibility of the declarant may be attacked . . . by any evidence which would be admissible for [that] purpose[] if [the] declarant had testified as a witness."

[3]Tennille Davis testified, "We all [were] drinking . . . [beer], [champagne], and [brandy] . . . . [The defendant] was drinking . . . brandy, and [champagne]." Maggie Hudson, the defendant's sister, testified, "I had a glass of champagne. [The defendant] and his girl friend [were] drinking and watching TV."

evidence by using examples similar to the Commonwealth's evidence in his instructions on deliberate premeditation. Specifically, the judge instructed as follows:

> "The jury may also consider a [d]efendant's conduct prior to the alleged killing as relevant to the issue [of] deliberate premeditation. For example, evidence that a [d]efendant, after a quarrel, went to a room, picked up a gun and returned to shoot a victim, or that a [d]efendant fired a second shot at a disabled victim would be such conduct that may be considered on the issue of deliberate premeditation."

Defense counsel objected to the statement, arguing that it was an improper comment on the evidence. See *Commonwealth* v. *Kane*, 19 Mass. App. Ct. 129, 138 (1984) (impermissible for judge "to array the facts with a bias [whether or not conscious] and so in effect to 'comment' on the evidence, to convey his own view of where the weight of the evidence lies"). On appeal the defendant argues that the judge's instruction "focused unduly on the prosecution's theory of deliberate premeditation, and undoubtedly led the jury to believe that the judge, himself, was convinced of the defendant's guilt."

We review the instructions in their entirety, rather than isolated portions removed from their context. See *Commonwealth* v. *Benjamin*, 430 Mass. 673, 681 (2000), and cases cited. Although the judge referred to evidence similar to that introduced by the Commonwealth, he carefully instructed the jury that they alone were to decide the facts unaffected by him or the lawyers and that, if he mentioned any evidence, it did not thereby lend to it any added value or importance, as he did so only to illustrate a legal principle. See *Commonwealth* v. *Perry*, 385 Mass. 639, 647 (1982). Moreover, the judge alluded to the examples as just that, and he did not imply that the jury were required to find deliberate premeditation if they found certain facts, but that they might consider the defendant's conduct in their determination. Accordingly, in *Commonwealth* v. *Pina*, 430 Mass. 266, 275 (1999), a case involving the same instruction by the same judge, we stated that "[a] reasonable juror could not have interpreted the instruction as a conclusive direc-

tive by the judge on the issue of deliberate premeditation." Considering the charge as a whole and in light of the entire record, the judge did not improperly comment on the Commonwealth's evidence or offer his opinion regarding the defendant's guilt.

7. *Extreme atrocity or cruelty.* The defendant asks us to revisit the question of the constitutionality of extreme atrocity or cruelty as a basis for a conviction of murder in the first degree. He argues that this theory of murder in the first degree (1) is void for vagueness; and (2) impermissibly permits a conviction without jury unanimity, in violation of due process guarantees of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. The issues were not properly preserved, so we review to determine if any error created a substantial likelihood of a miscarriage of justice.[4]

The defendant recognizes that we have repeatedly rejected due process challenges to G. L. c. 265, § 1, on vagueness grounds. See *Commonwealth* v. *Benjamin, supra* at 677; *Commonwealth* v. *Freiberg,* 405 Mass. 282, 288-290, cert. denied, 493 U.S. 940 (1989). Similarly, we have held that a conviction of murder by reason of extreme atrocity or cruelty in the absence of jury unanimity does not violate due process. See *Commonwealth* v. *Benjamin, supra; Commonwealth* v. *Hunter,* 427 Mass. 651, 657 (1998). The defendant argues, however, that the United States Supreme Court's decisions in *Richardson* v. *United States,* 526 U.S. 813 (1999), and *Apprendi* v. *New Jersey,* 530 U.S. 466 (2000), decided after the defendant's trial, require that we revisit the question.

In *Richardson* v. *United States, supra* at 815, the Supreme Court construed a Federal statute that called for mandatory minimum sentences for a drug "kingpin," defined in part as an individual engaged in a "violation" that is "part of a continuing series of violations." The Court held that a jury must unani-

---

[4] A void for vagueness challenge is a facial challenge that must be raised in a pretrial motion to dismiss. See *Commonwealth* v. *Chou,* 433 Mass. 229, 238 (2001); *Commonwealth* v. *Kwiatkowski,* 418 Mass. 543, 545 (1994). Here, the challenge was made at the time the judge instructed the jury. There was no objection to the absence of a jury unanimity instruction as to the *Cunneen* factors. See *Commonwealth* v. *Cunneen,* 389 Mass. 216, 227 (1983).

mously agree on the particular "violations" that constitute the "series" as elements of the crime rather than merely a "series of violations" in general. *Id.* at 818-820. The case has no application here because the factors underlying the theory of extreme atrocity or cruelty, see *Commonwealth* v. *Cunneen, supra* at 227, are neither elements of the crime nor separate theories of culpability, but "evidentiary considerations" that guide a jury in determining whether a murder was committed with extreme atrocity or cruelty. Because they are not elements of the offense, unanimity is not required. See *Commonwealth* v. *Obershaw*, 435 Mass. 794, 809 (2002).

We have said recently that the Supreme Court's ruling in *Apprendi* v. *New Jersey, supra* at 490 (any fact that provides basis to increase penalty beyond statutory maximum must be proved beyond reasonable doubt and submitted to jury), is similarly inapplicable. See *Commonwealth* v. *Obershaw, supra.* Here, the jury determined that the defendant murdered Jenkins with extreme atrocity or cruelty, and they were instructed that extreme atrocity or cruelty had to be proved beyond a reasonable doubt. The requirement that the jury base their determination on one or more of the *Cunneen* factors does not transform those factors into elements of the offense. Nothing in *Apprendi* or *Richardson* leads us to conclude that extreme atrocity or cruelty, as an element of murder in the first degree, is unconstitutionally vague, or that the absence of a requirement that the jury be unanimous as to the applicable *Cunneen* factors violates principles of due process.

The Supreme Court has rejected the argument that a jury must be unanimous on evidentiary factors used to establish an element of a crime. In *Schad* v. *Arizona*, 501 U.S. 624 (1991) (plurality opinion), the jury returned a general verdict of murder in the first degree in a prosecution based on evidence of premeditation and felony-murder. The Court held that the verdict did not violate due process because the Arizona statute that defined murder did not define either premeditated murder or felony-murder as independent elements, but as two possible means of proving the mens rea required for murder in the first

degree. *Id.* at 639-645 (opinion of Souter, J.).[5] We conclude that the defendant's conviction of murder in the first degree based on extreme atrocity or cruelty did not violate his right to due process of law.

8. *Review under G. L. c. 278, § 33E.* We have reviewed the entire record, the transcripts and the briefs and see no reason to reduce the murder conviction or order a new trial.

*Judgments affirmed.*

---

[5]Under Massachusetts common law, a jury must agree unanimously on the theory of culpability where the defendant has been charged with murder in the first degree. See *Commonwealth* v. *Berry*, 420 Mass. 95, 112 (1995).